ALBERT WOODRUFF and JEREMIAH P. ROBINSON
*vs.* JOHN H. MUNROE.

*Evidence—Trial under a Procedendo—Susequent rati-*
*fication of an Unauthorized Endorsement—Evidence*
*admitted by Agreement in the trial of a Cause, Ad-*
*missible at the trial of the same Cause under a Pro-*
*cedendo—Allegata and Probata—Ratification of an*
*Endorsement after the maturity of the Note—Es-*
*toppel—Evidence.*

Testimony taken under a foreign commission, and used in a trial of a cause, is admissible in evidence on the trial of the same cause under a *procedendo*.

In an action by the holders of certain promissory notes against an endorser who denied the genuineness of the endorsements, a deed of trust executed by the drawer of the notes for the purpose of protecting and saving harmless the defendant as endorser, was held admissible as evidence of his ratification of the endorsements of such notes as corresponded with those described in the deed of trust.

Woodruff and Robinson *vs.* Munroe.

Depositions taken under a foreign commission, and by written agreement of counsel used in the trial of a cause, are admissible as evidence in the same cause when tried under a *procedendo*, the agreement, the language of which did *not* limit its *use* to the first trial, remaining unrevoked.

Where, in an action against an endorser of certain promissory notes by the holders thereof, they undertake to trace their title through the endorsements, and set them out in their declaration, it is necessary to prove not only the endorsement of the defendant, but the subsequent endorsement.

If, in an action against an endorser of a promissory note by the *bona fide* holders thereof, it be shown that the endorsement was not genuine, and the defendant did not ratify or sanction it prior to the maturity of the note, and its transfer to the plaintiffs, he is not liable.

But if he adopted the note prior to its maturity, and by such adoption assisted in its negotiation, he would be estopped from setting up the forgery in a suit by a *bona fide* holder.

But any admissions by the defendant made subsequently to the maturity of the note, would not be evidence that he had authorized the endorsement of his name thereon.

APPEAL from the Circuit Court for Prince George's County.

This was an action instituted by the appellants, in January, 1858, against the appellee to recover the amount of five promissory notes, of which George W. Harrison was the drawer, and the appellee, together with James M. Benton and Elizabeth Harrison, were endorsers. The appellee pleaded that he did not promise as alleged, and issue was joined thereon. The case was tried once before and will be found reported in 17 *Md.*, 159. On an appeal from the Circuit Court, its judgment was reversed, and on the 18th of April, 1861, the case was sent back under a *procedendo*, "to a new trial thereof, in the same manner as if no trial had taken place."

On application the Court, on the 29th of November, 1865, directed three commissions to be issued to take testimony, one to Andrew Boardman, of New York City, one to Albert Stuart, of Alexandria, Va., and the third to Henry W. Thomas, of Fairfax Court House, Va. Proof was taken under the commission to Boardman only, and returned.

*First Exception:* At the trial the defendant admitted the due presentation of the notes sued on, and the refusal to pay, and due and proper notice to him of protest, &c.; the plaintiffs then read to the jury the evidence taken under the commission to Andrew Boardman, and offered to read the evidence taken under a commission issued in this cause on the 22d of December, 1869, to W. C. Yeaton and A. Stuart; to the admissibility of this latter evidence the defendant objected, upon the ground that it had been taken before the case was carried to the Court of Appeals, and insisted that proof so taken could not be read at the *procedendo* trial, there being no evidence that the witnesses were dead. The Court (A. B. HAGNER, Special Judge) sustained the objection, and refused to allow the evidence to be read to the jury. To this refusal the plaintiffs excepted.

*Second Exception:* The plaintiffs, to prove that the defendant had admitted his liability on said notes, offered to read to the jury the deed of trust from Harrison to Funsten, executed to secure the payment of these notes with others, but on objection by the defendant, the Court refused to allow the deed to be read in evidence, being of opinion that the notes sued on were not included in said deed. To this ruling the plaintiffs excepted.

*Third Exception:* The plaintiffs offered to read to the jury the testimony taken under a commission issued to Yeaton and Stuart, on the 22d of December, 1859, in the case of *Walters and Harvey vs. Munroe,* the same having been admitted in the former trial under an agreement of counsel, but the Court on objection by the defendant refused to permit the testimony to be read, for the reason that since said agreement was made, this case had been sent to the Court of Appeals, and was then being tried under a *procedendo,* and that the agreement to use the testimony at the first trial did not authorize its being read at this trial. To this ruling the plaintiffs excepted.

*Fourth Exception:* The plaintiffs offered three prayers; the first and second were granted, the following was rejected:

3. The plaintiffs offered proof of the admission of the defendant, only for the purpose of establishing the authority on the part of the defendant to have his name endorsed upon said notes, and asked the Court to instruct the jury that the admission of the defendant, if believed by them was evidence from which they might find such authority on his part to have his name endorsed on said notes.

The defendant asked the following instructions:

1st. If the jury believe that the names of Elizabeth Harrison and John H. Munroe, or either of them to the two notes marked W. and R., are not in the genuine handwriting of the said parties respectively, or that their names or either of them were placed on the said notes without their authority, or that the placing of their said names or either of them upon the said notes were never sanctioned by them, before or after they were placed upon the said notes, and before or after their maturity, the plaintiffs are not entitled to recover in this cause on the said notes.

2d. If the jury believe that the name of John H. Munroe on the notes marked F. K., is not in his genuine handwriting, or that his name was not endorsed on the said notes by his authority, or the said placing of his name was never ratified or sanctioned by him after it was placed upon the said notes and before their maturity, the plaintiffs are not entitled to recover on the said notes in this action.

3d. That there is no evidence in the cause to show that the name of the defendant was placed upon any of the said notes by his authority.

4th. That there is no evidence in the cause to enable the plaintiff to recover upon the said notes described in the declaration, and admitted to be lost.

5th. If the jury shall find from the evidence that the defendant did not endorse either of the said notes offered in evidence, and did not authorize any person to endorse them for

him, but that his signature on the back of the same respectively was forged, then the plaintiffs are not entitled to recover in this action, even though the jury may believe that the defendant subsequently admitted his liability upon the said notes, and said he had been fully indemnified on account of the same.

The Court granted the first, second, fourth and fifth instructions, but rejected the third instruction. To this ruling of the Court, in granting said instructions, as also to its rejection of their third prayer, the plaintiffs excepted, and the verdict and judgment being against them, they appealed.

The cause was argued before BARTOL, C. J., STEWART,. MAULSBY, MILLER, ALVEY and ROBINSON, J.

*Frank. H. Stockett,* for the appellants.

The Circuit Court erred in excluding the proof taken under the commission, which had been used at the former trial; the testimony so offered was proper and competent; it was taken under a foreign commission in the usual form, not a commission *de bene esse,* or to perpetuate testimony.

The object of issuing the commission was to procure for the purposes of the trial, and to prevent wrong being done, the testimony of witnesses beyond the jurisdiction of the Court, and whose attendance at the trial could not be enforced by the process of the Court, and the proof when so taken, in the words of the law, "shall be admitted in evidence at the trial of the cause." *Act of* 1773, *ch.* 7, *sec.* 7; *Code, Art.* 37, *sec.* 15.

The Court has no more power over the witness to compel his attendance at the second trial, than it had at the first, and in very many cases it would be a denial of justice to require the party at every successive trial, to have a new commission for proof and again prove his case over. In many cases this would be impossible, and in all cases it would accumulate costs and cause delays for no good object, which no Court will sanction.

Besides, the command of this Court is, that the case be proceeded with "as if no trial had taken place." Is that not imperative to the inferior Court, to regard the case precisely as if *no trial had been*—and as if the trial then to be taken, was the *first* trial?

On the return of the *procedendo*, the cause stands for trial as if *it never had been tried*, and at the first term of the Court after the receipt of the *procedendo*; provided, *thirty* days' notice of trial be given to the opposite party. *Art. 5, sec.* 16 *of the Code; Act of* 1790, *ch.* 42, *sec.* 4.

The second exception presents a mixed question of law and fact, part of which might properly be determined by the Court, but a portion, if not the whole, should undoubtedly have been left to the jury. Whether there be any evidence or not, is a question for the Judge—whether it is sufficient evidence, is a question for the jury. 1 *Green. on Ev., sec.* 49.

The interpretation of the deed in question, and its application to the purpose for which it was offered, were questions for the Court; 1 *Green. Ev., sec.* 277, *(note* 2;) *Emory & Gault vs. Owings,* 6 *Gill,* 199; but whether the deed included the notes in question, or whether the parties to the deed intended to include them, were questions for the jury, to be determined as well from the deed as all the circumstances in the case. *Simpson vs. Margitson,* 12 *Jur.,* 155; *Lang vs. Gale,* 1 *M. & S.,* 111; *Hutchinson vs. Baker,* 5 *M. & W.,* 535; *Smith vs. Wilson,* 3 *Barn. & Adol.,* 728; *Jolly vs. Young,* 1 *Esp.,* 186; *Walker vs. Hunter,* 2 *M. Gr. & Sc.,* 324.

Where a doubt as to the application of the descriptive portion of a deed to external objects arises from a latent ambiguity, and is, therefore, to be solved by parol evidence, the question of fact, as well as of intention, is necessarily to be determined by the jury. *Reed vs. Proprietors of Locks, &c.,* 8 *How. S. C.,* 274; *Savignac vs. Garrison,* 18 *How. S. C.,* 136.

The Court rejected the deed, not because of any legal insufficiency therein to secure the defendant on account of his liability on the notes in suit, but *because the notes sued on were not*

*embraced in the deed.* This was purely a matter of *fact* to be determined by the jury from an examination of the deed, and for which they were as competent as the Judge. It was their province to determine this fact, and it was error to withdraw the consideration of it from them. The deed certainly furnished evidence from which the jury might have found that the notes were included in it. *Benson vs. Boteler,* 2 *Gill,* 74; *Tiffany vs. Savage,* 2 *Gill,* 129.

The point raised by the third exception was, whether an agreement, regularly made by the attorneys of the parties, for the admission of evidence used under that agreement, at the first trial, was of avail to admit the same evidence under the *procedendo* trial—the words of the agreement not limiting its use to the first trial.

The objection raised against the agreement at the second trial, was solely because it had exhausted its purpose by authorizing the use of the proof on the first trial. The words of the agreement, however, give no support to this construction. It is not by its terms limited to the first trial or to any subsequent one. It is general in the terms used, to wit: that it may be read as evidence in the case of *Woodruff & Robinson vs. John H. Munroe.*

It is well settled by many decisions, that agreements and admissions made in a case, when tried originally, are competent and proper to be used on any subsequent trial upon *procedendo.* 1 *Green. Ev.,* secs. 171, 186; 1 *Phillip's Ev.,* 74, 75, 79; 1 *Cow. Phillips,* 388; 3 *do., notes,* 192, 225, 239, 249; *Doe vs. Bird,* 32 *Eng. C. L.,* 416; *Langley vs. Ld. Oxford,* 1 *Mes. & Wels.,* 508.

This principle has been distinctly recognized and sustained by this Court in *Merchants' Bank vs. Marine Bank,* 3 *Gill,* 97; *Far. Bank of Md. vs. Sprigg,* 11 *Md.,* 389.

The fourth exception raises the question of the correctness of the instruction given by the Court in granting the first, second, fourth and fifth prayers of the defendant, and the ruling of the Court in rejecting the third prayer of the plaintiffs.

The first instruction erred in requiring the plaintiffs to prove the handwriting of Elizabeth Harrison on said notes, or her authority for such signature as well as that of the defendant. If the plaintiffs proved the genuineness of the signature of the drawer, of Benton and of the defendant, or their authority or sanction to said signatures, it was all that could be required, to establish the liability of the defendant, which became fixed by his signature, and the act of subsequent parties could not impair this liability in the hands of a *bona fide* holder.

·The holder has the right to ignore any of the intermediate endorsers.

The instruction given by the second prayer was erroneous, because it limited the liability of the defendant to his sanctioning of the endorsement of his name on the notes *before the maturity* of the same, when he could just as well have done it *after* the notes matured, as before, in favor of a *bona fide* holder of the notes, who received them for valuable consideration and without notice.

The fifth prayer was granted on the hypothesis, that if the name of a person be endorsed on a negotiable note, without his authority, that the innocent holder cannot recover from such person, though he subsequently admits his liability for such endorsement and accepts from the drawer, who had so signed his name, full indemnity for such endorsements. Such a proposition cannot be sustained. Upon what pretext of justice or reason can he be exonerated from the liability so by him assumed? The acceptance of the indemnity not only concedes his liability, but *pays* him for it. It is the *consideration* which takes it out of the Statute as the assumption of the debt of another, and relieves the case from the defence of *nudum pactum*.

The refusal to grant the third of the plaintiffs' prayers was erroneous, because, from all the circumstances of this case, the admission by the defendant of his liability for these notes, which bore his name, was evidence, in that it was a circum-

stance pregnant, from which, with the other evidence in the case, the jury might find that he had authorized the drawer, Harrison, to write the defendant's name on the notes.

*Daniel Clarke* and *Samuel H. Berry*, for the appellee.

The defendant had two grounds of objection to the admissibility of the evidence, the exclusion of which constituted the first exception : first, because the proof had been taken under a commission which issued on a former trial, and before the case had been removed to the Court of Appeals ; second, because, having been taken under a commission, and the case carried to the Court of Appeals and sent back on *procedendo*, it could not be read at the trial held under the *procedendo*—there being no proof that the witnesses were dead. The evidence was properly rejected. *Code, Art.* 5, *sec.* 16 ; *Dorsey vs. Gassaway,* 2 *H. & J.,* 402 ; *Mahoney vs. Ashton,* 4 *H. & McH.,* 295 ; *Code, Art.* 37, *sec.* 15 ; 1 *Green. Ev., secs.* 163, 164, *and cases cited in notes ; Davis' Lessee vs. Batty,* 1 *Har. & Johns.,* 264 ; *Darnall's Lessee vs. Goodwin,* 1 *Har. & Johns.,* 262.

The Court properly refused to permit the deed from Harrison to be read. Whether the notes sued on in this action were included in the deed, was a question of law for the Court. *Whiteford vs. Munroe,* 17 *Md.,* 135.

The evidence, to the rejection of which the third exception was taken, was properly rejected, and to sustain the action of the Court, the authorities cited under the first exception were relied on.

To sustain the first prayer, reference may be had to the following authorities : *Walters & Harvey vs. Munroe,* 17 *Md.,* 150 ; *Whiteford vs. Munroe,* 17 *Md ,* 135 ; *Hunt vs. Edwards,* 4 *Har. & Johns.,* 283.

The only branch of the defendant's second prayer which is disputed, is that which lays down the proposition that the plaintiffs are not entitled to recover, if the placing of his name on said notes was never ratified or sanctioned by him *after* it was placed upon the said notes, and *before their maturity.*

If the placing of his name on said notes was ratified or sanctioned after the maturity, no legal liability attached thereby. The rights of the parties attached before or at the time of the maturity of the notes. *Walters & Harvey vs. Munroe,* 17 *Md.,* 150.

The fifth prayer was properly granted. If the signature was a forgery, a *subsequent* admission of liability would be *nudum pactum.* The signature being forged, it was *void* as to Munroe, and his saying he had been fully indemnified on account of the same, would create no liability upon a void obligation. *Walters & Harvey vs. Munroe,* 17 *Md.,* 150.

The Court properly refused to grant the plaintiffs' third prayer. The admission of the defendant was made *after* the notes became due, and could not fix his liability thereon anterior to their maturity. If the admission after the maturity did not fix the liability, how could the admission after the maturity be evidence of authority to sign his name? The admission after the maturity did not relate to the authority by which his name was on the note, but only to the question of liability. *Walters & Harvey vs. Munroe,* 17 *Md.,* 150.

ROBINSON, J., delivered the opinion of the Court.

The question presented by the first bill of exceptions is, whether testimony taken under a foreign commission and used in the first trial is admissible in evidence in the trial under the *procedendo?*

The obvious purpose of the law in allowing the depositions of *non-resident* witnesses to be taken under a foreign commission, was to enable suitors to avail themselves of the evidence of parties living beyond the jurisdiction and not within the reach of the Court, and the depositions thus taken the Code declares shall be admitted as evidence in the trial of the cause. *Code, Art.* 37, *sec.* 15. Now in the trial under the *procedendo,* the Court has no more power to compel the attendance of such witnesses than in the first, whereas their testimony may be

as necessary to a fair trial in the one case as in the other. It is evident, therefore, that the purpose of the law could only be gratified, and the rights of litigants fully protected, by allowing them to offer as evidence the depositions thus taken, as long as it may be necessary to a fair trial of the case. We can conceive of no possible reason why a second commission should issue to take testimony already in Court, whilst such a course of procedure would subject parties to vexatious delays, and burden them with oppressive costs. If the jury in the first trial had failed to agree upon a verdict, it will hardly be contended that the testimony would have been inadmissible in the second trial; yet in that event, as in a trial under a *procedendo,* the law directs the Court shall try the case again as if no trial had taken place.

The Court also erred, we think, in excluding the deed of trust offered in evidence in the second bill of exceptions. The defendant denied the endorsements, and alleged they were forgeries, and for the purpose of proving his adoption and ratification thereof, the appellants offered in evidence a deed of Harrison, the drawer of the notes, conveying in trust certain property to indemnify and save harmless the defendant as endorser of the said Harrison, with the notes and endorsements therein specifically set forth. Two of the notes thus described in the deed, one of $434$\frac{56}{100}$, dated October 20th, 1857, and the other of $328$\frac{79}{100}$, dated October 28th, 1857, correspond substantially in every particular with notes upon which this suit is brought. As to these two notes at least the deed was clearly admissible for the purposes for which it was offered.

In *Whiteford vs. Munroe,* 17 *Md.,* 136, the objection was not to the admissibility of this deed in evidence, but to the plaintiffs' second prayer, which claimed that it was to be considered by the jury as evidence of the ratification by Munroe of his endorsements of the notes sued on in that case. And it was held by this Court that the prayer was properly rejected, because the notes, the cause of action in that suit, did not cor-

respond with the notes referred to in the deed. The objection, therefore, was to the insufficiency of the proof. But in this as in that case the deed itself can only be offered as evidence of the defendant's ratification of such notes as correspond with those referred to in the deed. It is true there is a general provision embracing all other notes upon which the defendant was endorser, besides such as are specifically set out, but this is to be understood as referring to the genuine endorsements of the appellee. Such a clause cannot surely be construed as a ratification by him of endorsements not particularly described in the deed, and which when presented are pronounced by him to be forgeries. The purpose of this provision was to protect the appellee's endorsement of other notes not enumerated in the body of the deed.

We are also of opinion that the evidence offered in the third bill of exceptions ought to have been admitted. Other causes, it appears, were pending in the Circuit Court, brought by different plaintiffs against the appellee as endorser of Harrison, in all of which depositions had been taken under a foreign commission. Under these circumstances a written agreement was signed by the attorneys for plaintiffs and defendant, that the depositions taken in the case of Walters & Harvey against the defendant should be read in evidence in the trial of this cause, and under this agreement the evidence was in the first trial admitted. This agreement was filed in Court, and remained unrevoked at the time of the trial under the *procedendo*. Its terms are general, and nothing from which it could be inferred that it was the intention of the parties to limit its operation to the first trial. We think, therefore, that the plaintiffs were entitled to this testimony in the second trial. In *The Merchants' Bank vs. The Marine Bank*, 3 *Gill*, 97, it was decided that a statement of facts, agreed upon in the first trial, could be offered in evidence in the second trial under a *procedendo*.

The defendant's first prayer was properly granted. It is true, that the holder of a note payable to B, or order, and

endorsed by him in blank, may, in a suit against a remote endorser, strike out the intermediate endorsements, but if he undertakes to trace his title through the endorsements and sets them out in his declaration, he will be required to prove them as laid.   The proof must correspond with the allegation.

In *Chitty on Bills*, 637, the author says, "it will be incumbent on the plaintiff to prove his interest in the bill or note, or in other words, how he became a party to it.   The payee or the bearer of a bill or note originally payable to bearer has in general only to produce the instrument.   But if in an action by the indorsee of a note payable to A, or bearer, the indorsement by A be unnecessarily stated, it must be proved as laid." *Wynam vs. Bend*, 1 *Campbell*, 175.   The same principle is announced in *Byles on Bills, sec.* 118, and ABBOTT, C. J., is quoted as saying, "all the indorsements must be proved or struck out although not stated in the declaration."   It was held in *Crutchlow vs. Parry*, 2 *Camp.*,—that it was not necessary to prove the *prior* indorsements, because they were admitted by the subsequent indorsement of the defendant, but in this case it cannot be said that the *prior* indorsement of the appellee admitted the *subsequent* indorsement of Elizabeth Harrison.   The plaintiffs, therefore, having set out her indorsement in the declaration as the basis of their title, we think they were bound to prove it.

The second prayer was also properly granted.   If the indorsement was a forgery, and the defendant did not ratify or sanction the same prior to the maturity and transfer of the notes to the plaintiffs, he was not liable.

The fifth prayer, however, we do not think was sufficiently guarded.   Ordinarily, of course, any party may deny his signature, and if it was not made by him, or by his authority, or has not been adopted by him, the defence is available.   But he cannot allege the forgery if he has pronounced it genuine to a purchaser who bought it on his assurances, or has in any way by treating it as genuine assisted its negotiation.   2 *Parsons on Notes and Bills*, 593.   This prayer declares in broad

terms that the defendant is not liable if the indorsements are forgeries, although he may have admitted his liability upon the notes, at any time subsequent to the indorsements.    Now if he had adopted these notes prior to their maturity, and by such adoption assisted in their negotiation, he would be estopped from setting up the forgery in a suit by a *bona fide* holder.

The Court was right in rejecting the plaintiffs' third prayer. The defendant was not liable for the payment of the notes, on account of the admissions relied on, and made subsequently to the maturity of the notes, and it would be very unfair to infer from such admissions that Harrison, the drawer, had authority to use his name.    It is unnecessary to conjecture as to the motives which may have prompted these admissions.    They may have been made to screen the drawer from a prosecution for forgery.    Be that as it may, however, it is clear that they were not evidence for the purposes claimed in this prayer.

Being of opinion that the Court erred in the first, second and third bills of exceptions, and also in granting the defendant's fifth prayer, the judgment will be reversed and a new trial awarded.

*Judgment reversed and*
*new trial awarded.*

(Decided 1st July, 1870.)