# THE CALEDONIAN FIRE INSURANCE COMPANY OF SCOTLAND *vs.* JULIUS TRAUB ET AL.

*Waiver of Right to Remove a Case—Fire Insurance—Waiver of Proof of Loss—Estimate of Loss by Appraisers—Validity of Award—Prayers—Special Interrogatories to the Jury—Bill of Exceptions.*

The right of a party in a civil cause to have the record removed to another Court for trial, secured by Constitution, Art. 4, sec. 8, may be waived. And an agreement by one party not to remove a case in consideration of a promise by the other party not to press the case for trial at a certain term of Court is general in its language and prevents a removal at any subsequent term of Court, unless some new cause for removal should arise.

Md.]                              Syllabus.

A policy of fire insurance provided that the insured should furnish within a certain time preliminary proofs of his loss. After a loss the insurer offered to pay a certain sum in settlement of what it alleged to be due. This offer was rejected and the company (insurer), demanded an appraisement under the terms of the policy and it offered to pay the amount fixed by an award. *Held*, that these facts were legally sufficient evidence to show that the company had waived the preliminary proof of loss.

The policy of insurance sued on provided that in the event of a disagreement as to the amount of a loss the same should be ascertained by two appraisers, the company and the assured each selecting one, who should select an umpire, and upon the failure of the appraisers to agree the difference should be submitted to the umpire, the award of any two to determine the amount. An award was made by one arbitrator and the umpire. The controversy was whether there had been such a disagreement between the two arbitrators as to authorize the umpire to decide. A prayer offered by the company instructed the jury that if the award was made after a final failure of the arbitrators to agree, then the same was valid and limited the amount recoverable to the sum so ascertained. A prayer offered by the insured was to the effect that if the award was made before a final disagreement between the arbitrators, then the same was not binding. *Held*, that both these prayers were property granted and were not in conflict but presented opposite theories respecting the evidence.

It is not error to reject a prayer which is substantially the same as an instruction already given to the jury.

Special interrogatories to be submitted to a jury must not only be material, but they must be founded on the evidence; and when there is no evidence in the case which will enable the jury to respond it is error to propound them.

Interrogatories which propound to the jury a question of law, or which relate to an immaterial matter, or one about which there is no dispute, or questions which are indefinite and misleading should not be submitted to the jury.

Interrogatories to be answered by the jury must be submitted to the Court before the argument to the jury has begun; and a bill of exceptions taken to the refusal of the Court to propound interrogatories must show *when* the same were offered, for the Court of Appeals cannot assume that they were presented in due time.

Appeal from the Circuit Court for Carroll County (JONES, J.) The terms of the policy sued on are set forth in the first appeal in this case reported in 80 Md. 214. See also

the second appeal in 83 Md. 524. At the trial the following prayers were offered, among others:

*Plaintiffs' 5th Prayer.*—If the jury shall find the facts stated in the plaintiffs' first prayer, and shall further find that plaintiffs and defendant entered into the agreement for arbitration offered in evidence, and shall further find that under said agreement the appraisers entered into an appraisement, and shall further find that the appraisement was made on the 9th and 10th of August, 1893 ; and shall further find that on the 10th day of August one of the said appraisers was not present, but that the other appraiser and umpire were present and completed the appraisement on said day, if the jury shall so find, and shall further find that the award offered in evidence was signed by the umpire and one appraiser, and shall further find that the appraiser Rosenfeld refused to sign said award, because he had not participated in and was not present at the meeting of the other said appraiser and umpire on the said 10th day of August, if they shall so find, and shall find that he was not present and did not participate on said day, and shall further find that said failure to attend said appraisement by the said Rosenfeld, if they shall so find, was not caused by the fault of the plaintiffs, then the jury are not at liberty to consider said award in making up their verdict. (Granted).

*Defendant's 1st Prayer.*—That an award by appraisers is a condition precedent to recovery by the insured in the event of a disagreement between the insurer and the insured as to the amount of loss occasioned by a fire covered by a policy of insurance like the one sued on in this action ; and and that if the jury find that there was a disagreement between the plaintiff and the defendant as to the amount of loss by the fire testified to, and if they further find that appraisers were appointed in accordance with the conditions of the policy, but that there was no award, in consequence of the conduct of Rosenfeld, who was the appraiser selected by the plaintiff, then there can be no recovery in this action. (Rejected).

*Defendant's 2nd Prayer.*—That if the jury believe from the evidence that Rosenfeld sent the telegram to Baetjer admitted in evidence ; and if they further believe that Rosenfeld sent the said telegram for the purpose of influencing Baetjer, the umpire ; and if they further believe that Rosenfeld was acting with the approval of Reinhart, then the plaintiffs cannot recover in this action.    (Rejected).

*Defendant's 3rd Prayer.*—That if the jury believe that Rosenfeld absented himself or withdrew from the appraisal to prevent the making up of the award, then the plaintiffs cannot recover in this action.    (Rejected).

*Defendant's 8th Prayer.*—If the jury find that Rosenfeld and Burnbacker were appointed appraisers to estimate and determine the actual cash sound value at the time of the fire and the loss and damage by fire to the property belonging to J. Traub and Bro., the plaintiffs, and that J. G. Baetjer was chosen umpire by said appraisers to decide points of difference that might arise between them before any such differences had arisen between them ; and shall further find that the said J. George Baetjer, as umpire, was on hand to decide the differences between the two said appraisers ; and shall further find that all points of differences as to value of damaged stock were submitted to said Baetjer and decided by him ; and shall also find that the said Rosenfeld and Burnbacker, after appraising all the damaged stock and submitting all their differences as aforesaid to said Baetjer, disagreed as to the loss by total destruction of stock and made known and submitted that difference to said Baetjer and the same was decided by him ; and shall also find that the award in evidence was signed by George J. Burnbacker and J. George Baetjer, then the jury, in estimating the whole damages and loss the plaintiffs sustained, are bound by the amount of the award, viz., $1,043.08 ; and the jury may in their discretion allow interest upon that amount from the expiration of sixty days after the company received said award.    (Granted).

And the defendant also offered the following interrogato-

ries :   1. Did Rosenfeld send the telegram offered in evidence?

2. Did Rosenfeld send the telegram to influence Baetjer and prevent the making of the award ?

3. Was Rosenfeld acting under instructions from Reinhart when he sent the telegram ?

4. Was Rosenfeld, when he refused or neglected to sign the award, acting under the control of Reinhart ?

5. Was there an award ?

6. Was the plaintiffs' stock accurately taken and set down in the inventory made up by Traub and Keefer ?

7. Did the appraisers take an accurate amount of the stock of the plaintiffs ?

8. Was the award for the amount of the loss as ascertained by the appraisers.   (Refused).

The jury returned a verdict in favor of the plaintiffs, and assessed their damages at $5,000.00.   Whereupon, afterwards, by agreement of counsel of the respective parties, it was considered by the Court that the plaintiffs recover against the said defendant, as well the sum of $1,250.00, with interest from said date, as the sum of $64.94 for their costs in this behalf sustained.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER and BOYD, JJ.

*James Hewes* (with whom were *John P. Poe, Chas. T. Reifsnider* and *Chas. T. Reifsnider, Jr.*, on the brief), for the appellant.

The cause was submitted for the appellee on brief by *Clabaugh & Roberts, Benj. Rosenheim* and *George R. Gaither, Jr.*

McSHERRY, C. J., delivered the opinion of the Court.

For the third time the pending case has been brought to this Court.   The other appeals are reported in 80 *Md.* 214, and in 83 *Md.* 524.   Each time the Insurance Com-

pany has been the appellant and each time the company has contested and assailed a judgment entered upon a verdict rendered against it by a different jury for substantially the same amount of money. On the former appeals the law of the case was fully discussed and finally settled and there are but few new questions presented for decision now.

The suit was instituted upon a policy of insurance against loss by fire. The appellant company is the underwriter and the appellees are the insured. The stipulations contained in and endorsed upon the policy are, as is generally the case, quite numerous ; but it will not be necessary, in considering the questions now involved, to set forth any of these provisions at length ; and as two of them alone are invoked as defences to the action, their legal effect, rather than their exact phraseology, is all that need be stated. The ordinary requirement that the insured shall within sixty days after the happening of a loss by fire furnish the insurer with the formal proof of loss ; and the other equally usual stipulation enjoining that in the event of a loss occurring and in the event of a disagreement arising between the insurer and the insured respecting the amount of that loss, the controversy should be submitted to arbitrators and an umpire, whose finding, or a finding by a majority of whom, should be conclusive upon the parties, are the only provisions with which we are at all concerned. It is not disputed that a fire happened during the period covered by the policy sued on, and that a part of the stock in trade owned by the appellees and insured under the policy was damaged and a part was entirely destroyed. Notice of the fire was at once given by the appellees to the agent of the appellant though no formal proof of loss was then or ever afterwards furnished. The appellant's adjuster, however, in a few days visited the scene of the fire, took possession of the premises, held control thereof for nineteen days, and instructed the appellees to make up an inventory of the stock, showing the amount thereof lost and the amount damaged. The adjuster participated in this work and upon its comple-

tion and without exacting from the appellees the proof of loss required by the policy; offered to settle the appellees' claim for indemnity under the policy by the payment of eight hundred and sixteen dollars, insisting that that sum fully reimbursed the insured the amount of their loss by the fire. The appellees promptly refused to accept that offer and the adjuster being unwilling to pay more, demanded that an arbitration under the second of the two stipulations referred to in the beginning of this opinion, should be entered into. Accordingly the appellees and the appellant each selected an arbitrator and the two arbitrators chose an umpire and the three then proceeded to make up an inventory and appraisement of the loss and damage. They met on May the fourth, eighteen hundred and ninety-three, and on subsequent days, and the two arbitrators seemingly without much difficulty, agreed upon valuations of the goods not totally destroyed, but were widely separated in their estimates respecting the property wholly burned, or as it is described in the record, "out of sight." Whether they had so far disagreed as to authorize the umpire to decide and determine between them is one of the controverted questions of fact. On the ninth of May, Rosenfield, the arbitrator selected by the appellees, notified the other arbitrator and the umpire that he would not be able to be present or participate in the valuations the next day in consequence of business engagements elsewhere ; and when, on the tenth, he learned that the other arbitrator and the umpire had gone back to the scene of the fire, presumably to complete the valuation, he sent a telegram suggesting that they proceed no farther until they could communicate with Reinhart, who was acting as the friend and adviser of the appellees. Notwithstanding the absence of Rosenfield, Burnbacker, the other arbitrator and Baetjer, the umpire, went on with the valuation, and on the following day, the eleventh, the umpire gave his decision with respect to the goods " not in sight," and he and Burnbacker signed an award fixing the amount of the loss at ten hundred and

forty-three dollars and eight cents ; but Rosenfield refused to unite therein.   Acting upon the assumption that the award was invalid, and that it was invalid because the two arbitrators had not so far finally disagreed as to allow the umpire to determine between them the value of the goods totally destroyed, the appellees brought the pending suit claiming that there was due to them a sum largely in excess of the amount named in the alleged award and the appellant denied any liability beyond that sum.

The present record contains four bills of exception.   The first relates to a ruling of the trial Court refusing to remove the case to some other Court for trial.   The second has reference to the admissibility of evidence ; the third brings up the rulings on the prayers for instructions to the jury ; and the fourth was taken to the refusal of the Court to submit to the jury certain interrogatories to be passed on by them.

If the question raised in the first exception involved merely a naked refusal on the part of the Circuit Court to transmit, upon the formal application of the appellant, the record of proceedings to some other Court for the trial of the cause in the latter tribunal, the judgment appealed from would necessarily have to be reversed.   The right of a party in a civil cause, upon suggestion in writing supported by affidavit that he cannot secure a fair and impartial trial in the Court where the action is pending, to have the record transmitted to some other Court, is secured by *Sec.* 8, *Art.* 4, of the Constitution of Maryland.   But the right thus given is not one that cannot be surrendered.   It is a right which a party may or may not avail of or assert, precisely as the right to a trial by jury in civil proceedings where the amount in controversy exceeds five dollars, though guaranteed by *Sec.* 6, *Art.* 15, of the Constitution, may, by agreement, be relinquished.   Both are rights accorded by the organic law to suitors, but suitors are under no compulsion to assert or to insist on either ; and consequently parties may voluntarily waive the one or the other

or both if they elect to do so.   Now, we find in the record that a written agreement dated May the twentieth, 1895, was filed in the cause, stipulating in consideration of the appellees forbearing to press the case to trial at that time, that the case should be tried in the Circuit Court for Carroll County, if tried at all, and expressly waiving the right of removal.   This paper was signed by the attorneys for the appellant and by its agent or adjuster.   The appellees performed their part of the agreement and did not press for a trial but permitted the case to go over.   Subsequently, that is, on the sixteenth day of November, eighteen hundred and ninety-six, long after the appellant had secured the benefit of the postponement which it sought under the agreement of May, 1895, it made application to remove the case and filed an affidavit dated October the thirteenth, 1896. This motion for a removal was at once denied but no exception was taken or reserved.   On the eleventh of February, 1897, the appellant obtained leave to withdraw from the files this affidavit of October the thirteenth, 1896.   Immediately thereafter the same affidavit was refiled as of February the eleventh ; and the Circuit Court again refused to remove the case to another jurisdiction, and this last refusal is the error complained of in the first bill of exceptions. We discover no error in this action of the Court.

The right of removal was not given to be used for the purpose of defeating the ends of justice, but with a view to promote and subserve them.   It is difficult to escape the conviction that prior to the execution of the agreement of May, 1895, an application for a removal was about to be made by the appellants, merely to avoid being forced into a trial when not prepared to proceed ; and so when the agreement not to press for trial was signed, the appellant not only forebore to make a motion for a removal but distinctly and unequivocally stipulated not to remove the case at all.   The agreement of May, 1895, was not only a promise that the application should not be made during the May term of 1895 ; but obviously and in terms it had relation

to the future as well.   The attempt to have the case re-
moved in February, 1897, on the strength of the affidavit
used unsuccessfully the preceding November, was on its
face, an effort to evade the prior ruling of the Court on the
same subject, and was a palpable endeavor to revive a right
which had been validly and unconditionally waived and
relinquished.   The right to remove being a right that may
be waived, *Seth and Lowe Ex.* v. *Chamberlaine*, 41 Md.
194, and a waiver having been actually agreed to upon a
sufficient consideration, the right or privilege could not be
reasserted, unless, perhaps, in the event of some new cause
supervening ; but of the existence of such new cause there
is neither claim nor pretence.   We have heretofore held
that the waiver of a right to a trial by jury in a civil case
when once made was irrevocable, *Lanahan* v. *Heaver*, 77
Md. 605 ; and we see no reason for deciding that a similar
unqualified waiver of the right to remove should have any
less efficacy.   The terms of the waiver are broad, compre-
hensive and prospective.   They do not relate to any par-
ticular period of time, but are emphatic in declaring that
the case if tried at all shall be tried in the Circuit Court for
Carroll County.   They contain nothing from which it can
be inferred that it was the intention of the parties to limit its
operation to the term of Court during which the agreement
was entered into.   *Woodruff & Robinson* v. *Monroe*, 33
Md. 157.   If the right or privilege of removal can be
waived at all—and this is not now debatable—then the
waiver may be made absolute, unconditional and perpetual.
Had it been the design of the parties to limit the waiver to a
particular term of Court, apt words ought to have been em-
ployed to effect that end; but as the litigants had the power
to make the waiver unrestrictive and as the language they
have employed constituted just such a waiver, they must
be held to the letter and the spirit of their contract and
must abide by its provisions.

The second exception needs no discussion.   On the ap-
peal decided in 83 *Md.* we held that the question pro-

pounded to the witness Reinhart was proper ; and the same question to the same witness is again brought up together with the answer thereto, by the second exception.   On the former appeal the answer of the witness was not set out in the reeord ; in this it is.   The question having been once determined to be admissible there is no occasion to say more respecting it.

The third exception embodies the prayers.   The appellees' first and fifth prayers were granted, whilst all of those presented by the appellant, except its last or eighth, were rejected.   The legal principles announced in the appellees' first prayer have been twice passed on by this Court in this case.   There is no necessity for reviewing or restating them. It is now, however, insisted that there is no legally sufficient evidence adduced to support one of the hypotheses of this instruction.   The instruction deals with the doctrine of waiver as applicable to the proof of loss.   It sets forth hypothetically sundry facts and then proceeds as follows : and if the jury shall further find that the defendant company " denied its liability on other grounds than the absence of proof of loss, then the jury are at liberty to find from the evidence that the defendant company waived the necessity for a preliminary proof of loss."   A special exception was filed below to the effect that there was no evidence to show that the appellant had denied its liability on grounds other than the absence of the preliminary proof of loss.   This is the sole ground of objection not covered by the former decisions in this case.   We think there was sufficient evidence to go to the jury upon the question of fact.   The evidence was not, indeed, direct, nor was it explicit in the sense of proving a formal refusal distinctly based on other grounds ; but it was circumstantial and possessed quite enough probative force to justify the inference which the jury were given liberty to draw and which they in fact did draw. There had been an offer by the company to pay to the appellees the sum of eight hundred and sixteen dollars in full of their loss ; and this, too, not by way of compromise

but in settlement of what was conceded by the company's agents to be due. This offer to pay was a clear admission of liability, at least to that amount, notwithstanding proofs of loss—a preliminary requisite to the creation of any liability at all—had not been furnished. Then, again, when this offer was rejected an appraisement under the terms of the policy was demanded by the company and was entered upon and, as the company insists, was validly made and completed. According to the witness Reinhart he had several interviews with Hewes, the adjuster, and the latter never made any demand " for preliminary proofs of loss, but offered to pay the amount of the award." The amount of the alleged award was ten hundred and fifty-three dollars and eight cents. Here, then, were two offers to pay two distinct sums though no proof of loss had been furnished and the company refused to pay *more* than the amount of the award, not because it owed nothing and not because no proof of loss had been furnished, but obviously because it denied its liability to a greater extent. If it denied its liability beyond the amount of the award by admitting its liability up to that sum, then, manifestly, it denied liability on another ground than the absence of the proof of loss. To a certain extent it admitted its liability ; beyond that it denied all liability and denied it not because there had been no proof of loss furnished, but because it contended that no such sum as was claimed by the insured was due. If it denied liability because it insisted that the whole of the sum claimed was not due, then its denial of liability on *that* ground was a denial of liability on a ground other than the want of preliminary proof of loss. A conceded and unconditional willingness to pay a particular sum in settlement of a loss under the policy, but a refusal to pay a *larger* sum therefor is a distinct and unequivocal recognition of a liability to pay *something* ; and a liability to pay *anything* where no proof of loss had been furnished could only arise where the proof of loss had been dispensed with. Hence a refusal by the company to pay a larger sum than the one which it

offered to pay cannot be considered as the assertion of non-liability to pay *any* sum at all, and must, logically, be attributed to some other ground than the one which, if un-waived, would relieve of *all* liability ; and, therefore, must be predicated of some other cause than the mere failure to furnish preliminary proof of loss. This conclusion is an inference of fact which the jury were at perfect liberty to draw from all the evidence before them, and consequently it cannot be said that there was no legally sufficient evidence from which they might rightfully find that the refusal of the appellant to pay the loss sustained by the appellees was founded on other grounds than the mere omission to supply the preliminary proof of loss. There being no other objection to the prayer than the one just discussed, there was no error committed in granting it.

The appellees' fifth and the appellants' eighth prayers are claimed to be in conflict ; and it is accordingly insisted that there was error in granting the fifth instruction. We do not so read these two instructions. They present opposite theories of the case predicated of contrary conditions of fact ; but this circumstance by no means places them in a position of antagonism. As we have said in an earlier part of this opinion the question as to whether there had been such a disagreement between the appraisers or arbitrators on the subject of the value of the goods totally destroyed as to authorize the umpire to decide and determine between them, was one of the controverted facts in the case ; and, therefore, one of the facts to be found by the jury. If the jury had found that the award made up by one of the arbitrators and the umpire was an award made after the arbitrators had finally failed to agree, then the award was valid and binding, and limited the amount recoverable by the insured to the sum ascertained by the award. But if, on the other hand, the jury found, as well they might and as in point of fact they manifestly did, that the award relied on had been made up, agreed to and signed before there had been a final and fixed disagreement between the arbi-

trators, then there was, upon well settled principles fully recognized and explicitly announced in the decision of this case reported in 83 *Md.*, no such award as was binding upon either party ; and, therefore, no such award as would or could limit the right of the appellees to recover a sum in excess of or greater than that named in the paper relied on as an award. The fifth instruction granted at the instance of the appellees simply permitted a recovery of a sum in excess of the amount set forth in the so-called award, if the jury found the existence of the facts which, when found, showed that no award had been legally made ; whilst the eighth instruction of the appellant restricted the right of recovery to such sum as was named in the award, if the jury should find such facts as, under the law announced in this particular prayer, warranted the legal conclusion that there had been a valid and binding award. There was, consequently, no conflict or inconsistency between these instructions. The hypotheses of each were different and the conclusions had necessarily to be either that the award was or was not valid just as the facts, from which the one or the other conclusion might have been adduced, were found by the jury to exist.

There is no error predicable of the rejection of the other prayers of the appellant. The first, second and third were properly refused because there was no evidence to support their several hypotheses. The fourth, fifth, sixth and seventh are substantially the same as the eighth ; and as the latter was granted and fully covered every proposition sought to be presented by the others there was no error in refusing to grant these rejected prayers. Had they been granted they would simply have repeated in different forms the eighth instruction.

The fourth exception bringing up for review the refusal of the Court to permit eight interrogatories to be submitted to the jury presents no ground for a reversal of the judgment. The first interrogatory submitted an inquiry about which there was no dispute whatever. That Rosenfield

sent the telegram referred to in this interrogatory was conceded—certainly it was not denied either by him or by any one else.   The second, third and fourth interrogatories were properly withheld from the jury because there was not a particle of evidence which could possibly furnish the jury with an answer to them.   Had they gone to the jury and had they been answered, the answers would have been wholly speculative and conjectural.   Interrogatories to be submitted to a jury must not only be material, but they must be founded on the evidence ; and where there is no evidence which will enable the jury to respond to them, it is error to propound them at all.   Though it would have been undoubtedly competent for the appellant to show that the failure of the appraisers or arbitrators to reach a conclusion was due to the misconduct or bad faith of the appellees or their agent Reinhart or their appraiser Rosenfield ; still it would have been manifest error to ask the jury to respond to interrogatories framed upon that theory, when there was not a spark of evidence before them on that subject. Whether there was or was not an award, as propounded in the fifth interrogatory, was a question of law dependent on various facts.   Only questions of fact can be referred to a jury.   The sixth and seventh interrogatories were wholly immaterial and were therefore properly refused.   It did not make the slightest difference whether the stock of goods was accurately set down in an inventory taken by Traub and his clerk Keefer, unless the inventory referred to threw some light on the value of the goods at the time of the fire. Now as the evidence showed that more than one inventory had been taken by Traub and Keefer the interrogatory in not pointing specially to any particular one of them, was vague, indefinite and misleading.   It was equally immaterial whether the appraisers took an accurate account of the stock in trade owned by the appellees.   If an award was legally made then the award was binding—if no legal award was made then the paper-writing which purported to be an award was of no value and the estimates made by the ap-

praisers were merely estimates of the value of the goods that were left after the fire. The eighth interrogatory asked the jury to find something that the award, if it was an award, disclosed on its face ; and if it was not an award, the answer sought would have been wholly immaterial. The alleged award spoke for itself and purported to be for the exact sum claimed to have been ascertained by the umpire and one appraiser. If valid it was binding ; if invalid it did not prevent a recovery for a larger amount. Its validity was a question of law dependent on the facts presented in the appellees' fifth and the appellants' eighth instructions, and the eighth interrogatory could not possibly have elicited any response from the jury that would have reflected in the most remote way upon the validity or the invalidity of the alleged award.

There is, however, another reason why the Court was right in rejecting these special interrogatories. We have heretofore held in *Traction Co.* v. *Appel,* 80 Md. 603 and *B. & O. R. R. Co.* v. *Cain,* 81 Md. 105, that special interrogatories which it is designed shall be answered by a jury, must be propounded at least before the argument of counsel to the jury is begun, and that unless presented by that time they cannot be submitted at all. The record before us does not show *when* these interrogatories were presented. The fourth bill of exception states that they were presented *after* the Court had ruled on the prayers, but whether before or after the arguments to the jury had commenced is not disclosed. It may be, for aught that appears to the contrary, that they were rejected because not propounded in due time ; and unless the bill of exception shows that they were submitted in proper season we cannot *assume* that they were. A ruling will not be reversed unless error is apparent, and as it does not appear that these interrogatories were presented in time we would be justified in affirming the ruling in the fourth exception upon the ground that the record does not affirmatively show that the questions were submitted in time.

We find no errors in the record. The judgment will accordingly be affirmed and this somewhat protracted litigation will thus be brought to a conclusion.

*Judgment affirmed with costs*
*above and below.*

(Decided June 23rd, 1897.)