## TAUBMAN v. ALLIED FIRE INS. CO. OF UTICA et al.

### No. 5545.

Circuit Court of Appeals, Fourth Circuit.

Feb. 4, 1947.

A. Frederick Taylor, of Baltimore, Md. (Joseph Kolodny and Harry W. Allers, both of Baltimore, Md., on the brief), for appellant and cross-appellee.

Rignal W. Baldwin and David R. Owen, of Baltimore, Md. (Semmes, Bowen & Semmes, of Baltimore, Md., on the brief), for appellees and cross-appellants.

Before PARKER, SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The appeals in these cases were taken from two judgments of $4,480 each recov-

ered by the plaintiff in actions on policies of fire insurance issued by the defendants. By agreement the cases were tried together and all parties have appealed, the plaintiff on the ground that the amounts recovered were insufficient and the defendants on the ground that verdicts in their favor should have been directed by the Judge.

The plaintiff is a wholesale and retail dealer in automobile accessories. His business was conducted in a three story and basement brick building of which the basement was used for wholesale purposes, the first floor for retail and the second and third floors for wholesale storage and office space. Upon the contents of the building plaintiff had taken out policies of insurance with nine companies in the total amount of $75,700. With each of the defendants he carried an $8,000 standard form fire insurance policy. The fire out of which the actions on the last mentioned policies arose occurred at 8:55 p. m. on Tuesday, December 26, 1944. It had its origin on the second floor and the fire damage was restricted to that floor and the floor above. Considerable water damage, however, was suffered on the first floor and basement, and although merchandise of substantial value remained, all the goods in the building seemed to have been damaged to some extent either by fire or water. In the wake of the fire followed a period of extreme cold, so that for some weeks the premises and the contents remaining were encased in ice and salvage operations were exceedingly difficult and hazardous.

On the morning after the fire, adjusters for the parties and for other insurance companies, whose policies also covered the stock of goods, met upon the premises. Gould represented the plaintiff, Smith represented the defendants and other companies who had issued insurance in the total sum of $39,000 and Leizure represented the remaining insurance in the sum of $36,700. The adjusters for the insurance companies asked compliance with policy requirements, providing in effect that after loss it was incumbent upon the insured to protect the property from further damage, put it in the best possible order, separate forthwith the damaged and undamaged goods, and furnish a complete and detailed inventory of the destroyed, damaged and undamaged property. The adjuster for the insured refused this demand claiming that it was impossible to separate the goods because of the inclement weather conditions, or to furnish a complete inventory because of the loss of some of its records.

Except for certain ledgers recovered from the burning building, few of plaintiff's records escaped destruction. Nevertheless, by correlating the records with the records of plaintiff's other retail stores which drew their supplies from the burned warehouse, it was possible for Gould to compile and submit to the insurance companies two days after the fire an inventory and claim showing that a loss of $92,682.72 had been suffered. This claim was compiled in the following manner: To the last previous physical inventory of the goods on the premises taken January 1, 1944, was added the value of all subsequent purchases. From this total were subtracted the total sales and transfers to other stores and the remainder represented the amount of the loss which the insurers were called upon to meet. The inventory submitted did not contain an itemized list of the goods insured. It consisted of lump sum monthly totals taken from the books, and represented the book loss suffered by the insured. On this account the inventory and claim were rejected by the companies. The companies' adjusters, however, after Gould's refusal to comply strictly with policy requirements, employed a certified public accountant on January 4, 1945, to verify the claim of loss. He examined the insured's books and submitted a report on January 25, 1945, which showed that the insured's claim was in accord with his records.

In view of the circumstances, the adjusters for the companies four or five days after the fire also employed Padberg, a salvage expert and special agent for the Underwriters Salvage Company, to make an estimate of the value of the merchandise remaining on the premises. He was produced as a witness for the plaintiff at the trial and his testimony showed that he went upon the premises and estimated the sound value of the in-sight goods remaining after the fire at something in excess of $40,000 and the salvage value of these

goods between $17,000 and $18,000 less approximately $5,000 as the cost of inventorying, removal and reconditioning. The testimony of Gould, Padberg and Leizure indicated that this estimate was submitted to the adjusters for the plaintiff and for all the companies, and that they agreed to the figure of $12,500 as the amount of the salvage. While this testimony tends to show that a settlement as to the salvage was reached with the defendants as well as the other companies, Smith denied that he accepted the Padberg figures for the companies that he represented. He also testified as did other witnesses that from time to time he insisted upon strict compliance with the policy requirements and that he joined the other adjusters in the employment of the accountant and of Padberg only in order to investigate all the circumstances of the loss and to check the plaintiff's claim when it should be supported in the manner contemplated by the policies. The effect of this testimony is discussed below.

Some time after the fire the plaintiff, unknown to the company adjusters, undertook to move, and within a month had completed moving, the salvageable merchandise to his other stores where he disposed of a part thereof for around $6,000. He made no inventory and kept no record of the removed merchandise or of the proceeds of their sale for the reasons that he viewed these damaged goods as junk and had not the labor to spare with which to make up an inventory. Further, since all the sales in which these goods were involved had been for cash, he had no record of the amounts received therefrom.

The whole matter continued in negotiation for some weeks, with no final agreement being reached. On February 23, 1945, plaintiff submitted to the insurance companies a Proof of Loss in the sum of $92,682.72, accompanied by a letter from his adjuster reaffirming his refusal to make a physical inventory because of the expense involved and because the loss was total to the insurance carried. This claim was rejected by defendants' adjuster by letter dated April 20, in which he still insisted upon performance of the policy conditions, whereupon in the following September the present actions were filed. The companies represented by Leizure, in the language of a defendant's witness, "paid off".

■■ The plaintiff's appeal is directed to the question raised by the policy provisions in regard to the inventory and the separation of the damaged from the undamaged goods. It is contended that the judge was in error in refusing to submit to the jury the question as to whether the insurance companies, through their adjusters, waived these requirements, and in instructing the jury that substantial compliance with these requirements was essential to the plaintiff's recovery. These rulings, however, were not prejudicial to the plaintiff. The judge overruled the prayers of the defendants for a directed verdict and submitted the question of substantial compliance to the jury which found in the plaintiff's favor. In the course of the argument in this court the plaintiff made the additional contention that verdicts for only $4,480 in each case on policies in the amount of $8,000 each were not supported by the great weight of the evidence, which indicated a loss total to the insurance. This was the real source of the plaintiff's dissatisfaction with the judgments, but it presents a matter which this court has no power to review. Moreover, the amount of the verdicts was in fact supported by the testimony of Padberg who was permitted without objection to express an opinion as to the value of the goods on the premises at the time of the fire. We find no ground on which the plaintiff's appeal may be sustained.

■■ The defendants' appeal rests upon the contention that the policy requirements as to inventory and separation of damaged goods must be strictly complied with, and that even substantial compliance is insufficient; and that in any event, there was no evidence of substantial compliance in this case and hence it was error for the Judge to submit the question to the jury. We think that this appeal is also without merit. The Maryland cases show that policy provisions of the kind under consideration are an integral part of the contract of insurance and must be obeyed by the policyholder as a condition of recovery when a loss occurs. On the other hand,

it is well established that such provisions should receive a reasonable interpretation and should not be used to relieve the insurer from liability for loss when literal compliance with the contract has become impossible or the policyholder has been led by actions of the representatives of the insurer to believe that performance of the conditions is not required.

■■ So far as the inventory requirement in the pending case is concerned, we think that the question of waiver as well as the question of substantial compliance might well have been submitted to the jury. The plaintiff, to the extent that it was possible for him to do so, furnished an inventory made up from the books and other information that survived the fire. It contained all the information that he could furnish as to the value of the goods on hand at the time of the fire, and it was received by the adjusters of the companies and submitted to their accountant who verified the insured's figures. It is said, nevertheless, that the plaintiff should have gone further and should have obtained copies of the invoices of the goods on hand from the persons from whom they were purchased so as to supply the details missing from his books of account. The policy indeed provided not only that the insured should furnish a complete and detailed inventory, but also contained the following requirement: "The insured * * * as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representatives." Such a requirement, as the Maryland decisions show, is valid and must be observed by the insured if it is possible for him to do so. But in this case it was not invoked. The insurance adjusters, having received a copy of an inventory made up from the books, and having verified it, did not notify or request the plaintiff to produce copies of the destroyed invoices or designate any time or place for their production. The provision in question therefore did not come into play, and the plaintiff was justified in believing that the companies did not insist upon it.

■■ It is equally clear that there was evidence from which the jury might have concluded that the requirement as to the separation of the damaged goods was waived by the defendants. All of the goods in the warehouse· were burned or damaged by fire or water. A substantial quanity of them survived but were so intermingled with debris and so encased in ice that separation would have been an exceedingly difficult and expensive operation. The insured was unwilling to undertake the task and thereupon the companies adopted the practical expedient of employing an expert, who examined the goods and was able to make an estimate of their salvageable value in which the representatives of all the parties had so much confidence that they agreed to accept it. This conduct was strong evidence of waiver, and we think it was for the jury to decide whether the insured was justified in believing that he had been relieved from the policy provisions notwithstanding Smith's reference to them from time to time during the bargaining period. There was no evidence of fraud, as the Judge pointed out in his charge; and it was apparent to the insured that the separation and detailed inventory of the tangled mass of merchandise would serve no useful purpose and give no additional information of value to the company already satisfied with Padberg's report. The issue raised by Smith's denial that he agreed to Padberg's figure was for the jury to decide. In like manner, Smith's insistence on literal conformity with the policy provisions was evidence for the jury's consideration, but was not conclusive. As was held in Royal Ins. Co. v. Drury, 150 Md. 211, 232, 132 A. 635, 45 A.L.R. 582, such a statement in the view of the better authorities does not of itself prevent the operation of a waiver.

The attitude of the Court of Appeals of Maryland in respect to the doctrine of waiver is shown by its exposition of the subject set out in Royal Ins. Co. v. Drury, 150 Md. 211, 233, 132 A. 635, 644, 45 A.L.R. 582, where it is said: "* * * We are aware that this whole doctrine of waiver in insurance law has been severely criticised, but, in view of the overwhelming weight of authority which supports it, we

are not prepared to repudiate it. It seems to rest on the theory that courts do not wish to encourage technical defenses by insurance companies, and that to avoid technical forfeitures they have established the rule that slight acts by insurance companies will constitute a waiver of such defenses. Whatever may be said for the logic of this position, it is undoubtedly supported, as we said above, by the great weight of American authority and would now seem to be firmly established as the law of this country."

The broad field in which the doctrine should be applied in the view of the Maryland court is shown by its quotation from 13 Am. & Eng. Ency. of Law 345 (2nd ed.) in Bakhaus v. Caledonian Ins. Co., 112 Md. 676, 683, 77 A. 310, 313, where in respect to the waiver of the terms of an insurance policy as to proof of loss it was said: "A great variety of acts and circumstances have been held to constitute waiver of the terms and conditions of policies as to proofs of loss, but these may be brought together under three general heads, namely: First, acts, conduct, or statements of the insurer or those representing it by which the insured is induced not to make proofs or to believe that they are not required or will not be insisted on; second, acts or conduct of the insurer or its representatives recognizing its liability and showing an intention not to require proofs or to dispense with them; third, acts or conduct making it apparent that the furnishing of proofs would be an unnecessary formality and nugatory."

■ In harmony with these liberal views it is held in Maryland that in the application of the doctrine, estoppel is not an essential element of waiver. See Rokes v. Amazon Ins. Co., 51 Md. 512, 34 Am. Rep. 323; Continental Ins. Co. v. Burns, 144 Md. 429, 437, 125 A. 232; Federal Mutual Fire Ins. Co. v. Julien, 144 Md. 380, 383, 125 A. 229.

■ It is also firmly established in Maryland that an agent or representative of the insurer, such as the insurance adjusters in the pending case, can, on behalf of his employer, waive the performance by the policyholder of requirements of the policy like those now under consideration,

as will appear from the cases cited and also Caledonian Fire Ins. Co. v. Traub, 86 Md. 86, 37 A. 782; Hartford Fire Ins. Co. v. Keating, 86 Md. 130, 38 A. 29, 63 Am.St.Rep. 499; Continental Ins. Co. v. Reynolds, 107 Md. 96, 68 A. 277; Goebel v. German American Ins. Co., 127 Md. 419, 96 A. 627.

The acceptance by the adjusters in the pending case of the Padberg estimate of the amount of the salvage as bearing upon the waiver of the requirement of separation and inventory of the damaged goods, is not unlike the situation in Caledonian Fire Ins. Co. v. Traub, 86 Md. 86, 37 A. 782, where an offer to pay a sum in settlement of a fire loss was held to furnish evidence for the consideration of the jury that the insurer had waived the preliminary proof of loss by the policyholder. See also Hartford Fire Ins. Co. v. Keating, 86 Md. 130, 149, 38 A. 29, 63 Am.St.Rep. 499.

The question of substantial compliance with policy requirements imposed upon the policyholder for the benefit of the insurer was considered by the Maryland court in passing upon the sufficiency of inventories furnished by the insured, and his obligation to supply duplicate invoices in Reynolds v. German American Ins. Co., 107 Md. 110, 68 A. 262, 15 L.R.A.,N.S., 345; Mutual Fire Ins. Co. v. Pickett, 117 Md. 638, and Mutual Fire Ins. Co. v. Owen, 148 Md. 257, 129 A. 214. It was held that it is the duty of an insured, under such policy provisions, to furnish adequate inventories and to produce duplicates of his bills when required by the Insurance Company so that it may test the accuracy of the claim of loss; and while the clause does not exact anything unreasonable or impossible, it does require the policyholder to use all reasonable means in his power to comply. But it will be observed that in the pending case the plaintiff furnished to the defendants as full an inventory as possible from the books saved from the fire, and that the duty to produce duplicate invoices did not arise because the Insurance Companies did not demand them.

From this resume of the Maryland decisions it is seen that it would have been error to direct verdicts for the defendants, and the judgments of the District Court will therefore be affirmed.