(Decided June 23rd, 1897). .

# THE HARTFORD FIRE INSURANCE COMPANY *vs.* THOMAS J. KEATING et al.

*Fire Insurance—Conditions of Policy Affecting the Interest of the
Assured—Knowledge by Insurer's Agent of the Character of
Assured's Title—Estoppel— Powers of Insurance Agents —
Waiver of Proof of Loss—Insurable Interest.*

A policy of fire insurance provided that if the interest of the insured
be other than that of unconditional and sole ownership, the policy
shall be void, unless otherwise provided by agreement endorsed
thereon.   *Held*, that the meaning of this provision is that, whether
the title of the insured be legal or equitable, his interest in the prop-
erty must be completely vested, not contingent or conditional nor
for years or life only, nor that of a part owner, but it must be of
such a nature that if the property be destroyed, he suffers the entire
loss.

When at the time of the issue of a policy the insured was the purchaser of the property at a judicial sale which had not then been finally ratified, his interest in the same is not unconditional within the meaning of the above-mentioned clause.

But if the insurance company's agent by whom the policy is issued has full knowledge that the interest of the insured is not that of a sole and absolute owner, the company is estopped from setting up such defence in action in the policy.

It is not necessary that the interest of the assured in the property be personal.  If he holds the same as agent, trustee, attorney, &c., he has an insurable interest.

When property is sold under a mortgage foreclosure, and the purchase money has not been fully paid, the attorney of the mortgagee has an insurable interest.

Where the company's agent is supplied with policies of insurance, signed in blank, with authority to issue them and collect the premiums, his knowledge of the nature of the interest of the insured in the property is the knowledge of the company.

A clause in a policy providing that no agent shall have power to waive any of its conditions except such as by its terms may be endorsed thereon, does not apply to conditions relating to the inception of the contract, but operates to prevent agents from modifying the terms of the policy after it has been issued.

A condition requiring proofs of loss to be furnished by the insured within sixty days after a fire is binding and must be complied with.

But such condition may be waived either expressly or by such conduct on the part of the insurer as is inconsistent with an intention to demand strict compliance.

If after a loss the insurer recognizes its liability and promises to pay, a waiver of proof of loss may be inferred therefrom.

A special agent of an insurance company sent by it to investigate a loss has apparent authority to waive the preliminary proof.

After a mortgage sale of property had been made and before the final ratification thereof by the Court, a policy of fire insurance on the property was issued to the purchaser. It contained a clause avoiding it in case the interest of the assured was other than that of unconditional and sole ownership.  Part only of the purchase money was paid and the policy was endorsed by the insurance company so as to make the loss payable to plaintiffs' attorneys, as their interest might appear.  The agent who issued the policy and made the endorsement thereon was fully acquainted with all the facts of the case and the character of the title.  The purchaser having failed to pay the balance of the purchase money, an order for a re-sale at his risk was obtained, but before such sale was had, the property was totally

destroyed by fire.   In an action by the attorneys as payees of the ·
policy, *Held*,

1st.  That the defendant was estopped from setting up the defence that
the interest of the assured in the property was not absolute and un-
conditional, because its agent had full knowledge of all the facts re-
lating to the title.

2nd.  That the plaintiffs had an insurable interest and were entitled to
recover.

Appeal from the Baltimore City Court (PHELPS, J.)   At
the trial the plaintiffs offered the following prayer, which
was granted.

*Plaintiffs' Prayer.*—That if the jury believe that the policy
sued on was issued by the defendant's agent at Centreville,
Frank Keating, and that at the time of the issuance of said
policy the defendant's said agent knew the state of the title
to the property described in said policy, and understood
that the said policy was desired by the owners of the said
property to cover the interest of the plaintiffs in this suit,
as well as the interest of Frank W. Draper, in the said prop-
erty ; and if the jury shall further find that the endorsement
of October 2nd, 1894, " loss, if any, payable to Thomas J.
Keating and B. Palmer Keating, attorneys, as their interest
may appear," was made on said policy by the defendant's
agent at Centreville, and was reported by said agent to the
home office of the defendant corporation at or about its
date, and that Thomas J. Keating, Jr., the agent of the de-
fendant who made said endorsement, did, at the time of
making the same, know the state of the title to the property
described in the said policy ; and the jury shall further find
that the dwelling-house mentioned in said policy was de-
stroyed by fire on or about the fifth day of January, 1895,
and that shortly thereafter the defendant's agent, Catanach,
went to Centreville, examined into the circumstances of said
fire and the value of said dwelling, and that after having
done so had a conversation with Thomas J. Keating, one of
the plaintiffs, in which conversation he stated that the said
dwelling was a total loss, and in answer to a request of the

said plaintiff that the check for the plaintiffs' interest in said loss should be payable to the plaintiffs' order, stated that the said check could not be made payable to the plaintiffs' order, but would be made payable to the order of Frank W. Draper, and the plaintiffs jointly ; and if the jury further find that from such conversation the said plaintiffs believed that the defendant's agent had waived formal proof of loss under the said fire, and that the said Catanach did intend thereby to waive such proofs of loss ; and if the jury shall further find that after the said conversation no demand was made upon the plaintiffs, or either of them, by any of the defendant's officers or agents for any formal or other proof of loss under said fire, except the letter from Catanach to Thomas J. Keating, Jr., dated February 23rd, 1895; and shall find that the plaintiff, Thomas J. Keating, was notified of the contents of said letter, and did, on March 19th, 1895, send to the defendant corporation the proof of loss dated March 19th, 1895, and that the same was received by the defendant on March 20th, 1895, and that he did not hear from the defendant or any of its agents, with reference to the said proof of loss, until May 20th, 1895, when he received the letter dated April 16th, 1895, then the plaintiffs are entitled to recover in this action.   (Granted).

And the defendant offered the following eleven prayers, all of which were refused by the Court :

*Defendant's 1st Prayer.*—The defendant, by its counsel, prays the Court to instruct the jury that under the pleadings and evidence in this case the plaintiffs cannot recover, and therefore their verdict must be for the defendant.   (Refused.)

*Defendant's 2nd Prayer.*—That there is no evidence in this case that the said Thomas J. Keating, and B. Palmer Keating ever had, or now have, any insurable interest in the property purporting to be insured under and by the policy of insurance sued on in this case, and therefore their verdict must be for the defendant.   (Refused.)

*Defendant's 3rd Prayer.*—That there is no evidence in

this case to show that the said Thomas J. and B. Palmer Keating, attorneys, had at the time of the policy of insurance sued on in this case was indorsed, "loss, if any, payable to Thomas J. and B. Palmer Keating, attorneys, as their interest may appear," or at any time subsequent thereto prior to the date of the fire herein testified to, any insurable interest in the property purporting to be insured under and by said policy of insurance, and therefore their verdict must be for the defendant.   (Refused.)

*Defendant's 4th Prayer.*—That if the jury find from the evidence in this case that on January 10, 1893, the said Frank W. Draper was the purchaser of the property purporting to be insured by the policy of insurance sued on in this case, at a public sale of the same made by Thomas J. and· B. Palmer Keating, attorneys named in a mortgage from Florence J. Sparks, etc., to Eliza Wilkinson, dated August 9th, 1889, and recorded among the Land Records of Queen Anne's County, in Liber W. D., No. 3, folio 263, etc., and that said sale was reported to the Circuit Court for Queen Anne's County, and that an order of ratification *nisi* of said sale was made and passed by said Court on September 27th, 1892, and that the same was finally ratified on January 25th, 1893, and that on said January 10th, 1893, said Draper had not then paid, and in fact has never paid the whole purchase price of said property, then they must find that said policy of insurance was by its terms void, and that any assignment of the same, or any interest thereunder, is equally void, and their verdict must be for the defendant. (Refused.)

*Defendant's 5th Prayer.*—That if the jury find from the evidence in this case, that on the tenth day of January, 1893, the said Frank W. Draper was a purchaser of the property purporting to be insured by the policy of insurance sued on in this case, at a public sale of the same, made by Thomas J. and B. Palmer Keating, attorneys named in a mortgage from Florence J. Sparks, etc., to Eliza Wilkinson, dated August 9th, 1889, &c., and that said sale had been duly

reported to the Circuit Court for Queen Anne's County, and that on September 27th, 1892, an order of ratification *nisi* of said sale was made and passed by said Court, and said sale was finally ratified on January 25th, 1893, and if they further find that on February 2nd, 1894, the defendant paid to said Draper the sum of eighty dollars on account of a partial loss by fire under said policy of insurance, and if they further find that on October 2nd, 1894, the entry " loss, if any, payable to Thomas J. and B. Palmer Keating, attorneys, as their interest may appear," was endorsed on said policy with the knowledge and consent of said defendant, yet, if they further find that said defendant at the time of the payment of said partial loss, and of the assent to said entry, had no knowledge of the true nature of the title of said Draper to the property purporting to be insured by said policy other than that contained on the face thereof, and that the true nature of the title of said Draper to the property was not endorsed thereon, even if they further find that the agent or agents of the defendant at Centreville had knowledge of the true nature of the title of said Draper to said property, but did not communicate the same to the defendant, then their verdict must be for the defendant.    (Refused).

*Defendant's 6th Prayer.*——That if the jury find that Frank W. Draper was the purchaser of the property, purporting to be insured by the policy of insurance sued on in this case, at a public sale of the same made Thomas J. and B. Palmer Keating, attorneys named in a mortgage from Florence J. Sparks, etc., to Eliza Wilkinson, dated August 9th, 1889, &c., and as such purchaser said Draper did make default in the payments of the purchase money thereof, and on or about December 3rd, 1894, the Circuit Court for Queen Anne's County, in equity, did pass its order finally directing the said attorneys to make a resale of said property, at the risk of said purchaser, then they must find that a change took place in the interest and title of subject of the insurance purporting to be covered by said policy, and that said

policy is therefore by its terms void, and their verdict must be for the defendant.   (Refused).

*Defendant's 7th Prayer.*—That if the jury find from the evidence in this case that the house destroyed by fire, as testified to in this case, and purporting to be insured against loss by fire by the policy of insurance sued on in this case, was destroyed by fire on January 5th, 1895, and that the preliminary proof of loss was furnished to the defendant on or after March 19th, 1895, then their verdict must be for the defendant.   (Refused).

*Defendant's 8th Prayer.*—That if the jury find from the evidence in this case that the policy of insurance sued on in this case was issued on January 10th, 1893, and that on the 24th day of August, 1894, Fedderman and Earle did file for record in the Circuit Court for Queen Anne's County, a judgment against said Draper in the sum of $100 recovered before Emory, J. P., on said 24th day of August, 1894, then they must find that said policy of insurance is by its terms void, and their verdict must be for the defendant. (Refused).

*Defendant's 9th Prayer.*—That if the jury find that the loss by fire under the policy of insurance sued on in this case occurred January 5th, 1895, and that thereafter J. S. Catanach, special agent of the defendant, did, on or about February 23rd, 1895, write the letter to Thomas J. Keating, Jr., the then agent of the defendant at Centreville, which has been offered in evidence, and that said letter was on its receipt handed to Thomas J. Keating, co-plaintiff in this case, by said Thomas J. Keating, Jr., and that the preliminary proof of loss was received by said defendant on or after March 19th, 1895, then their verdict must be for the defendant.   (Refused).

*Defendant's 10th Prayer.*—That no preliminary proof of loss, such as is described in the policy of insurance sued on in this case, was ever furnished to the defendant by the insured, and therefore their verdict must be for the defendant. (Refused).

*Defendant's 11th Prayer.*—That if the jury find that the

plaintiff, Thomas J. Keating, and B. Palmer Keating, as attorneys named in a mortgage from Florence J. Sparks, etc., did offer the property purporting to be insured under and by the policy of insurance sued on in this case for sale at public auction on September 20th, 1892, and that said Frank W. Draper was the purchaser of said property at said sale for the sum of eighteen hundred dollars, and that said sale was finally ratified on January 25th, 1893, and that said Draper did pay on account of said purchase money $732.55 in cash, and did for the balance thereof pass unto said attorneys the two promissory notes for the sum of $597.76, and $565.73, dated September 20th, 1892, and payable respectively one and two years after date, and signed by himself, the said Frank W. Draper, as principal, and S. C. Coursey and William Dever as sureties thereof, and that said Draper defaulted in making said deferred payments; and that on or about December 3rd, 1894, an order was passed by the Circuit Court for Queen Anne's County, in equity, finally directing said attorneys to resell said property at the risk of said purchaser, Draper, and that said plaintiffs, as said attorneys, have not resold said property at the risk of said purchaser, nor pursued their rights against the sureties on said notes to final recovery of the amounts due thereon, then they must find that the plaintiffs have not made their loss under and interest in said property appear, and their verdict must be for the defendant.   (Refused).

The jury returned a verdict for the plaintiffs for $1,576.20.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, PAGE, ROBERTS and BOYD, JJ.

*E. P. Keech, Jr.* (with whom was *Geo. Morris Bond* on the brief), for the appellant.

If the appellees were to claim as agents or " attorneys " for the mortgagee solely, this action must fail, for the reason that they have no more actual interest in the preservation of the buildings than has an agent charged with the

care of real estate and the collection of rents, who surely may insure only in the name of his principal.    The real question is, therefore, has an attorney named in a mortgage with power to make sale of the mortgaged premises in case of default, any insurable interest in the mortgaged premises, even after default has occurred and proceedings for sale have been commenced?    We answer, "No."    For though the law requires such an attorney to give bond and report his actions to a Court of Equity, for ratification, this is done for the protection of the mortgagor and from motives of public policy, which demands that there be an end of litigation and a security of titles.    The attorney remains throughout the agent of the mortgagee.    This has, in fact, been expressly decided by this Court in the case of *Barrick* v. *Horner*, where it was held that an attorney named in a mortgage is merely the donee of a power without interest— a mere naked power.    *Barrick* v. *Horner*, 78 Md. 253. The powers, rights, duties, of such an attorney, are set forth in *Code P. G. L.*, Art. 66, section 6.

At no time is the title to the mortgaged premises vested in him.    In this respect, he may be said to stand, at best, in a somewhat analagous position to a trustee appointed by the decree of a Court of Equity to make sale of realty, who merely acts for the Court, to convey title to the property, from the parties to the cause, to the purchaser, on the ratification of the sale and the fulfillment of the terms of sale by the purchaser.    *Gibson's case*, 1 Bland, 138 ; *Wagner* v. *Cohen*, 6 Gill, 97 ; *Schindell* v. *Keedy*, 43 Md. 463 ; *Bolgiano* v. *Cooke*, 19 Md. 375 ; *Hanover Ins. Co.* v. *Brown*, 77 Md. 64.

In this respect the position of a trustee, of a commissioner to make sale, or of other like ministerial officer of the Court, differs totally from that of a receiver or trustee, who is charged with the custody and care of the property, and is really the hand of the Court, and the representative of the parties *pendente lite*, and it differs also in its very essence from that of a factor or agent who has the actual possession

of personal property, who, it has been held, may insure the same in his own name.   In cases like the present, each party has his own interest which is insurable in his own name, and which should have been severally insured.   The Court below decided this point on the theory that the attorneys' bond was sufficiently broad to make them and their sureties accountable under its terms, for the proceeds of the insurance policy.   But, we submit, this is an erroneous view of the case.   The terms of the bond, however broad, can not give the attorneys a stake in the preservation of the insured buildings, where none exists otherwise.   The bond is, in the view taken by this Court in the case of *Barrick* v. *Horner*, merely for the purpose of guaranteeing the faithful execution of the trust or power vested in them.   78 Md. 253–6.

It was substantially conceded below that the error in the description of the interest of the insured in the property de scribed in the policy is substantial, and that in the absenc e of the estoppel, which the appellees seek to set up, the policy was void *ab initio*.   There can be no doubt that at the time the policy was issued Draper did not have an unconditional and sole ownership in fee-simple in the property. The sale, at which he became purchaser of it, was not ratified until January 25th, 1893, fifteen days after the policy was written.   And not until this ratification takes place does any title whatsoever vest in the purchaser.   *Wagner* v. *Cohen*, 6 Gill, 97-102 ; *Hanover Ins. Co.* v. *Brown*, 77 Md. 64.   Draper, even after the ratification of the sale, paid only a portion of the purchase money.   He never received a deed to the property, and any qualified title which he had was always subject to the vendor's lien for the unpaid part of the purchase money.   This lien was in fact subsequently foreclosed.   Under the decisions of this Court the policy was void *ab initio*.   *Citizens' Ins. Co.* v. *Doll*, 35 Md. 89 ; *Bowman* v. *Franklin Ins. Co.*, 40 Md. 620 ; *Wineland* v. *Security Ins. Co.*, 53 Md. 276 ; *Beck* v. *Hibernian Ins. Co.*, 44 Md. 95 ; *Westchester Fire Ins. Co.* v. *Weaver*, 70 Md. 536 ;

*Farmers' Ins. Co.* v. *Hull*, 77 Md. 498.    See also *Hinman*
v. *Ins. Co.*, 36 Wis. 159 ; *Barrett* v. *Ins. Co.*, 7 Cush. 175 ;
*McCluskey* v. *Ins. Co.*, 126 Mass. 306.    And particularly
*Ins. Co.* v. *Curry*, 13 Bush. (Ky.) 312.

But the appellees seek to estop the insurance company
to set up these facts in three ways.    They claim, in the first
place, that inasmuch as the policy was intended to cover all
the interests in the property, and as the agent of the company,
who wrote the . policy, was fully conversant with the true
state of the title, and knew the intention of the insured, the
insurance company is bound by his knowledge, *non constat*,
the interest of the insured is not truly set out therein.    The
learned Judge, in passing on the prayers and motions below,
started with the proposition, that there is no form of words
whereby an insurance company or any other person in law
can avoid the consequences of the fraud or neglect of its
ow    agent.    To this proposition, of course, we readily as-
sent.    But we do not agree, that, ergo, the appellant is
bound in this case.    We contend that in the true view of
the facts in this case, the only negligence is that of the as-
sured and the appellees.    For the policy specially provides,
that not only the assured, but all others interested in the
policy, shall be bound by its conditions and warranties ; and
in words, whose meaning is as clear as day, says that " no
officer, agent or other representative of this company shall
have power to waive any provision or condition of this pol-
icy, except such as by the terms of this policy may be sub-
ject of agreement, endorsed thereon or added thereto, and
as to such provisions and conditions, no officer, agent or
representative shall have such power, or be deemed or held
to have waived such provisions or conditions, unless such
waiver, if any, shall be written upon or attached hereto,"
and above " this entire policy, unless otherwise provided by
agreement, and endorsed hereon or added hereto, shall be
void, etc. "

The assured, as well as the insurer, is charged with a
knowledge of its contents, and is bound by its terms.    And,

it is submitted, that the appellant's first special exception should therefore have been granted, on the theory, that parol evidence is inadmissible to vary the terms of a written contract. *Barrett* v. *Union Ins. Co.*, 7 Cushing, 175-80 ; *McCluskey* v. *Ins. Co.*, 126 Mass. 305-8 ; *Hough* v *Ins. Co.*, 36 Md. 398-427. Therefore, Draper, the insured, the Keatings, the appellees, the attorneys named in the mortgage, and Frank Keating, clerk of the attorneys, who wrote the policy for the insurer, are all bound by the terms of the contract. But the appellees proved that at the time this indorsement was made, Thomas J. Keating, Jr., the agent of the company, was told that the policy had been intended to cover the interest of the attorneys in the property. He accordingly, without the knowledge of Draper, made the endorsement on the policy, and sent notice thereof to the home office of the company. This was done by the agent, after Draper had made default in the payment of the second purchase money note, and at a time when he and his father and uncle were in consultation about the resale of the property at Draper's risk, which this same agent subsequently "attended to," for the firm of Thomas J. and B. Palmer Keating.

These circumstances are but part and parcel of the appellee's whole case. The only agents of the appellant who knew the true state of the title to the property described in the policy were at the same time agents of the appellees, engaged in attending for them to the very matters over which the litigation has arisen. It is utterly incompatible with the duties of an agent, that he should act for both parties to a contract at once, and in case one of the principals knows of the dual agency where the other is in ignorance of it, he is charged with the moral, as well as the legal, duty to see that the agent does his whole duty to both parties, and that knowledge of the real status of the parties be brought home to the party ignorant of it. The neglect so to do is in itself presumptive evidence of fraud. *Story's Commentaries, Agency* (9th ed.), sec. 31, note ; secs. 210-

11 ; *Rasin* v. *Clark*, 41 Md. 158 ; *Robertson* v. *Chapman*, 152 U. S. 673 (note, L. C. Pub. Co. ed.) ; *Lloyd's Paley on Agency* (3d ed.), 10.

The claim of waiver, proof of loss, is based on the conversation of Catanach and the appellees on the occasion of Catanach's visit to Centreville just after the fire. A moment's consideration of the true nature of that conversation will show, that Catanach did not have in mind the proofs of loss at all. No mention was made of them. The only things shown by the record as having been touched on in that conversation, are the total loss of the property and the general course of business of the insurance company. His authority to waive the provisions of the policy is not proven nor shown. *Hallis* v. *State Ins. Co.*, 65 Iowa, 454. Nor is there anything in the nature of his conversation with the appellees, or in the language of the letter of February 23d, to create a waiver ; 2 *May on Ins.*, sec. 465, pages 1073-4 ; *Engebretson* v. *Ins. Co.*, 67 Barb. 595-6-7 ; *Birmingham* v. *Ins. Co.*, 64 N. Y. 162 ; *Walsh* v. *Ins. Co.*, 71 Iowa, 337 ; *Walsh* v. *Ins. Co.*, 77 Iowa, 376 ; *Miller's Code of Iowa* (1880), vol. 1, page 299 ; *Ins. Co.* v. *Evans*, 9 Md. 1-15-16 ; *Edwards* v. *Ins. Co.*, 3 Gill, 185 ; *Ins. Co.* v. *Doll.*, 35 Md. 89-101 ; *Mispelhorn* v. *Ins. Co., supra.*

*Edward N. Rich* and *William S. Bryan, Jr.*, for the appellees.

Page, J., delivered the opinion of the Court.

This is an action on a policy of insurance issued by the appellant, insuring the property of one Frank W. Draper against loss by fire. The policy was issued to Draper, and on the 2nd day of October, 1894, at the request of Draper, by proper endorsement, the loss was made payable to the appellees "as their interest may appear." The property insured was a two-story frame building on a lot situated in the town of Centreville. The whole property, prior to the accrual of Draper's title, had belonged to a Mrs. Sparks, who held a policy of insurance on the house, issued by the

appellant.  This policy was cancelled on the 10th o' January, 1893, the same day on which the policy sued on in this case was issued.   In September, 1892, the appellees, as attorneys, in a mortgage from ,Mrs. Sparks to Eliza Wilkinson, sold the lot and improvements to Draper.   The sale was reported to the Court, and ratified *nisi* on the 27th of September.   Draper complied with the terms of sale, by making a cash payment of $732.55, and executing with sureties, and delivering to the appellees two notes for $597.76 and $565.73, respectively, and thereupon entered into the possession of the property.   One of the appellees then demanded of Draper that he should insure the house and transfer the policy to them, and it was in pursuance of this that the policy was issued and the loss afterwards made payable to the appellees as attorneys.   It was issued by Frank Keating, who was then the agent of the company, intrusted by it with the possession of blank policies, authorized to sign and issue them, receive the premiums and account for them ; and moreover was the company's only agent in Centreville.   It is admitted that when the policy was issued, he was fully cognizant of the character of Draper's title, the nature of the appellees' interest in the matter, and the understanding between Draper and the appellees under and by which the insurance was applied for.   Keating besides being the agent of the company was also a clerk in the law office of the appellees, and as such had drawn all the papers connected with the sale of the property (except the order of final ratification), and therefore knew all the facts and circumstances of the case.   In October, 1893, he ceased to be the agent of the company, and Thomas J. Keating, Jr., was appointed in his stead.   A small fire having injured the property in January, 1894, the company paid in February the loss on account thereof to Draper.   Shortly after this, the appellees ascertained that in consequence of a neglect of Frank Keating, the policy had not been transferred to them, as it was agreed should be done.   Accordingly they took steps to have this effected, and on the 2nd

October, 1894, the endorsement was made on the policy by Thomas J. Keating, Jr., the agent, and by him on the same day forwarded to the company, who received it on the fifth of October.    At that time this agent knew the exact state of Draper's title and of the interest of the appellees, but did not notify the company further than appeared in the policy and his daily report, neither of which make mention of any incumbrances.    Subsequently Draper having made default in the payment of his notes, the appellees on the third of December obtained a final order for a resale of the property at his risk, but before a sale was had, on the fifth of January, the building was totally destroyed by fire.

Upon this state of facts the appellants contend :   1st.  That Draper's interest was " other than unconditional and sole ownership," and therefore the policy by its terms is void ; and 2nd.  That the appellees had no insurable interest in the property.

The policy contains the condition, that " if the interest of the insured be other than unconditional and sole ownership," it shall be void, " unless otherwise provided by agreement endorsed " thereon or added thereto.    This is a part of the contract of insurance ; it is binding on both parties, and must be construed by the same rule as other contracts.   " The Court must give to the language used its just sense, and search for the precise meaning and one requisite to give due and fair effect to the contract, without adopting either the rule of a rigid or of an indulgent construction."    *Wash. F. Ins. Co.* v. *Kelly,* 32 Md. 446.    In the case just cited, this Court has stated the general purpose for the insertion of conditions like the one now under consideration in insurance policies.    It is there said, " They were doubtless originally directed against wagering policies, and were intended to protect underwriters from paying losses to those who in fact had not sustained them, who really had nothing at hazard, and whose interest, therefore, was that the event should happen."    The nature and extent of the interest of the insured, are matters largely influential with underwriters in taking or

rejecting risks and estimating premiums, and for that reason
any condition respecting them in the contracts is material,
and must be construed so as to effectuate the purposes of
the parties.    But while this must be done, the law assumes
that the parties understood the words they have used, and
therefore unless there are potential reasons to the contrary,
they are bound by the legitimate and usual meaning of the
phrases they employ.    Now it must be observed that it is
not title, but interest that is spoken of in the clause.    Title
and interest are entirely different things.    It was undoubt-
edly competent for the parties to have contracted as to the
title, as was done in *Wineland* v. *The Security Ins. Co.*, 53
Md. 283 ; but in this case they have chosen to limit the pro-
visions of the clause to the condition of the interest, either
legal or equitable.    The question therefore presented to
us now is, was the "interest" (legal or equitable) of Dra-
per, "unconditional and sole ?"    As to the meaning of these
words when used in the present connection, there seems to
be a concurrence of authority.    To be "unconditional and
sole" the interest must be completely vested in the assured,
not contingent or conditional, nor for years or life only, nor
in common, but of such a nature that the insured must sus-
tain the entire loss if the property is destroyed ; and this is
so whether the title is legal or equitable.    *Imperial F. Ins.
Co.* v. *Dunham*, 117 Pa. St. 475 ; *Pa. F. Ins. Co.* v. *Dough-
erty*, 102 Pa. St. 572 ; *Rumsey* v. *The Phoenix Ins. Co.*, 17
Blatchford, 529 ; *Dupreau* v. *The Hibernia Ins. Co.*, 76 Mich.
615 ; *Aetna F. Ins. Co.* v. *Tyler*, 16 Wendall, 396 ; *Oshkosh
Co.* v. *Germania F. I. Co.*, 71 Wis. 455 ; *Wash. Ins. Co.* v.
*Kelley*, 32 Md. 421; *Clay Ins. Co.* v. *Beck*, 43 Md. 358 ;
*Westchester F. Ins. Co.* v. *Weaver*, 70 Md. 540.

We have been referred to cases, where it is held that
when the insured is in possession under a contract of pur-
chase and the legal title has not passed by a conveyance,
the ownership is not unconditional until the purchase money
has been wholly paid.    *Ins. Co.* v. *Curry*, 13 Bush. 312.
But it may be doubted whether such cases are in line with

the current of authority.    We are not concerned, how-
ever, with that question; for at the time the policy was
issued, Draper was not in the position of a purchaser, but
that of a bidder only for the property.    His offer of pur-
chase had not then been ratified by the Court, and until it
was, the contract was not complete, and his interest in the
property was dependent upon the subsequent action of the
Court.    Prior to the final ratification his interest was only
an inchoate right.    *Lannay* v. *Wilson*, 30 Md. 551.    The
effect of final ratification, it is true, was rétroactive, so that
he became invested with the title from the day of the sale;
but at the time the policy was issued, his interest was
entirely conditional, depending, as it did, upon the final
order of the Court.

The appellees however insist the appellant is estopped
from setting up this defence, because their agents knew all
the facts, both at the time the policy was issued, and when
the endorsement was made to the appellees.    The policy
was issued through Frank Keating, and from all the evi-
dence before us we think he must be regarded, while so act-
ing, as the agent of the company.    The proof shows that
he was supplied with' policies in blank, was authorized to
issue them, signed them and delivered them to the parties
who desired insurance, received the premiums and accounted
for them to the company.    Such authority constituted him
a general agent of the company within the territory as-
signed him, in the matter of soliciting and accepting risks,
and agreeing upon the terms and contract of insurance.
*Cont. Ins. Co.* v. *Ruckman*, 127 Ill. 372; *Ins. Co.* v.
*Wilkinson*, 13 Wall. (U. S.) 222; 2 *Wood on F. Ins.*, sec.
409; *Cone* v. *Niagara F. Ins. Co.*, 60 N. Y. 619; *Hotch-
kiss* v. *Germania F. Ins. Co.*, 5 Hun. 90.    If such an agent
has knowledge of the facts at the time he issues the policy,
the company will be estopped from relying upon them as a
cause of forfeiture.    This principle is well sustained by
authority; it rests upon considerations of common honesty,
that an insurer with full knowledge of the facts or charge-

able with such knowledge shall not enter into a contract of
insurance, receive the premiums thereon and then be per-
mitted to set up those facts to evade the liabilities the contract
imposes on him.    Nor does the clause providing that "no
officer, agent or other representative of this company shall
have power to waive any provision or condition of this
policy except such as by the terms of this policy may be
endorsed hereon or added hereto," &c., affect the question.
It does not apply to the making of the contract, but to the
provisions of the contract itself, after it has gone into effect,
so as to prevent agents from modifying the terms of the
policy after it has been issued.    The general doctrine is
well stated in *Wood* v. *The Am. F. Ins. Co.*, 149 N. Y. 384.
The Court then said :  " That the general agents of an in-
surance company may waive stipulations and provisions
contained in the policy with respect to the conditions upon
which it shall have inception and go into operation as a con-
tract between the parties, by delivering it with knowledge
of all the facts and receiving the premium, has long been
settled.    It is so obviously just, that a party to a written
contract should be precluded from defeating it by asserting
conditions and stipulations contained in it, which would pre-
vent its inception, and which he knew at the time he de-
livered it and accepted the benefits were controvened by the
actual facts, that any statement upon which the rule rests
is no longer necessary.    The restrictions inserted in the
contract upon the power of the agent to waive any condition,
unless done in a particular manner cannot be deemed to
apply to those conditions which relate to the inception of
the contract, when it appears that the agent has delivered
it and received the premiums with full knowledge of the
actual situation."  *Continental Ins. Co.* v. *Ruckman*, 127 Ill.
364 ; *Franklin Fire Ins. Co.* v. *Chicago Ice  Co.*, 36 Md.
102 ; *Maryland Ins. Co.* v. *Gusdorf*, 43 Md. 514 ; *The Am.
L. Ins. Co.* v. *Mahone*, 21 Wall. 152 ; *Ins. Co.* v. *Wilkin-
son*, 13 Wall. 222 ; *Ben. Franklin Ins. Co.* v. *Gillett*, 54
Md. 218.

There is no evidence in the cause that tends to prove that Frank Keating was the agent of the appellees in any respect touching the matter of insurance.   It is clear, however, that at the time the policy was issued he was fully informed of the state of Draper's title, and that the policy was desired to cover also the interest of the appellees.   It follows from what precedes, we find no error in the rejection of the appellant's fourth and fifth prayers.

The second and third prayers of the defendant raise a question as to whether the appellees had an insurable interest in the property.   The contract of insurance, being one of indemnity, the insured must have such an interest in the property as that its destruction will result in pecuniary loss to him.   But it is not necessary he shall have a title, provided his interest, whatever it may be, is such that it would be impaired or injured by its destruction.   *Franklin F. Ins. Co.* v. *Coates*, 14 Md. 297.

Nor is it is requisite, that the interest be personal : If the insured has an interest in the property as agent, trustee, &c., or hold such relation to the property, that its destruction will involve pecuniary loss to him or to those for whom he acts.   For this reason it has been held, that an administrator where the personalty was insufficient to pay the debts, had an insurable interest in the real estate.   *Clinton* v. *Hope Ins. Co.*, 45 N. Y. 454.   And so of a judgment creditor (*Rohrback* v. *Germania F. Ins. Co.*, 62 N. Y. 47), and of a surety responsible for a mortgage debt.   *Ins. Co.* v. *Thompson*, 95 U. S. 547.

In the case at bar, the assignment is to the appellees' " attorneys, as their interest may appear ;" that is, the indemnity secured by the policy shall extend to and include such interest in the property as the appellees might hold as attorneys.   When the assignment was made, the sale had been reported and finally ratified.   At the time of the fire, a large part of the purchase money being then unpaid, the attorneys had obtained from the Court an order for a resale at the risk of Draper.   It is not difficult to perceive how

the attorneys, for themselves and those whom they repre-
sented, were interested in the property to the full extent of
the unpaid purchase money, and how its destruction would
affect them.    These remarks dispose of the appellant's
second and third prayers, which were properly rejected.

It is further contended there can be no recovery, because
of the failure of the appellees to furnish the proofs of loss
within sixty days after the fire.    The policy provides this
shall be done, unless the time is extended in writing, and
further, that the loss shall not be payable until sixty days
after the proofs of loss have been received by the company.
It was argued on the part of the appellees, that "the sole
penalty" under the terms of this policy, of a failure to
promptly file proofs of loss is to suspend the right of action
until such proofs are filed.    There are some authorities that
seem to sustain this contention.    The general doctrine, how-
ever (and without deciding how far it is applicable to a
policy like the one in this case), maintained by the great
weight of authority and by our own decisions, is, that condi-
tions like this form parts of the contract of insurance and are
binding on both parties and must be complied with.    *Spring
Garden Ins. Co.* v. *Evans*, 9 Md. 13; *Ins. Co.* v. *Doll*, 35
Md. 89; 2 *Wood on F. Ins.*, sec. 439 *et seq.*

But all the authorities agree that this condition may be
waived, either expressly or by acts and conduct of the in-
surer himself, or of his agent, having real or apparent au-
thority; and the waiver may be inferred from such acts and
conduct as are inconsistent with an intention to insist upon
a strict performance.    *Rokes* v. *Amazon Ins. Co.*, 51 Md.
512.

And the reason for this rule obviously is, that an insurer
whose conduct is such as to induce the insured to rest under
a well-founded belief that strict performance of such a con-
dition will not be insisted on, cannot in good faith afterwards
set it up as a bar to a recovery.    If, therefore, there was such
conduct of the appellant or of its agent (with competent
authority) as induced the appellees reasonably to believe

that proofs of loss would not be demanded and they did so believe, and by reason thereof they failed to make and file them with the company within the prescribed time, it would offend every principle of natural justice to permit the insurer to take advantage of it. 2 *Wood on F. Ins. Co.*, 470 *et seq.*, and authorities there cited, especially the case of *Ripley* v. *Aetna Ins. Co.*, 30 N. Y. 136; *Georgia Home Ins. Co.* v. *Kinnier*, 28 Gratt. 88; *Little* v. *Phoenix Ins. Co.*, 123 Mass. 380; *Eastern R. R. Co.* v. *Relief Ins., &c.*, 105 Mass. 570. The proof shows that shortly after the fire, Catanach, a special agent of the appellants, went to Centreville to view the ruins of the property, and investigate all the circumstances attending the loss. While there he had a conversation with Thomas J. Keating, one of the appellees. After some general talk about the fire, the latter said to him, " When you send the money for the loss of this property, I want you to send us a separate check for our interest in the matter ;" Catanach replied, " No, I cannot do that ;" Keating asked, " What will you do ;" the reply was " send a joint check to you gentlemen as attorneys and to Mr. Draper." Keating then explained to him, he was afraid he would have trouble with Draper about getting him to sign a joint check. Later on Keating, Jr., the agent, wrote to Catanach that Draper was enquiring about his loss and that he (the agent) simply tells him it is " in the hands of the company ;" and two days later, on the 20th of February, he again writes to Catanach, this time to say, " the attorneys for the mortgagee in the Draper matter have requested me to write and ask you to send a proof of loss, so that they could make it out and get Draper to make oath to it. I told them that you usually attended to the making out of the proof, but that I would write you about it." On the 23rd February, 1895, Catanach replies; he writes: " Inasmuch as we have notice of attachment proceedings at Baltimore in regard to this loss, it is important that great care should be exercised in the matter on this account; while I have at times made up proofs of loss, it is not customary to do so,

and in all cases of litigation I decline to do so, or allow the
agent to take any part in furnishing or making up proofs of
loss, but that no obstacle may be thrown in the way of the
assured," he directs the agent to inform him where printed
blanks can be had, &c.   There was evidence tending to show
that the request for " the proof" of loss " to be made out,"
was made by Palmer Keating, who did not have charge of
the business and had no knowledge of the previous conver-
sations of Catanach with his brother Thomas, who testified
that after his conversation with Catanach, he did not think it
was necessary to file proofs of loss, but that afterwards he
had done so because he thought it would do no harm and
Catanach had desired it to to be done.   In the first prayer
of the appellees the jury were required to find as one of
the conditions of the right of the plaintiffs to recover : that
after the fire, "Catanach went to Centreville, examined into
the circumstances of said fire, and the value of said dwell-
ing, and that after having done so had a conversation with
Thomas J. Keating, one of the plaintiffs, in which he stated
that the dwelling was a total loss, and in answer to a request
of the said plaintiff that the check for the plaintiffs' interest
in said loss should be payable to the plaintiffs' order, stated
that the said check could not be made payable to the plaintiffs'
order, but would be made payable to the order of Frank W.
Draper, and the plaintiffs jointly ; and further find that from
such conversation the said plaintiffs believed that the defen-
dant's agent had waived formal proofs of loss and that the
said Catanach did intend thereby to waive such proofs of
loss, &c."   Now if Catanach stated to the appellees that
he would send a joint check, it was a recognition of the
liability of the company, and wholly inconsistent with an in-
tention to contest the plaintiffs' right of recovery.   And if the
jury found the appellees so understood it, and Catanach so
intended it, and the acts of the plaintiffs were thereby in-
fluenced by it, the legal conclusion of the Court, that the
facts so put to the jury, constituted a waiver, was entirely
warranted.   In reply to the objection that there is no proof

of Catanach's power or authority to waive this condition, all we have to say is, it was at least within the scope of his apparent authority. He was a special agent of the company sent by it to view the ruins, investigate the loss and find out as much about it as he could. Mr. Keating, the agent, when asked about the policy and when it will be paid, consults Mr. Catanach, who replies authoritively in his letter of 23rd of February. And when finally proofs of loss are made, they pass to Mr. Bond, an agent, who testifies he sent them to Catanach, and the matter was then turned over to him for such action as he should see proper in the premises.

These facts, we think, clearly show that he held the actual or at least the apparent authority to examine into and adjust the circumstances of the loss and the liability of the company. We think the defendant's 7th, 9th, 10th and 11th prayers ought not to have been granted. The defendant's sixth prayer was properly rejected because there was no evidence of a change in the title of possession. *Washington F. Ins.* v. *Kelly (supra)*. Of the defendant's eighth prayer it is only necessary to say there is no condition in the policy against encumbrances. *Bowman* v. *Franklin Ins. Co.*, 40 Md. 620. There were other points raised and discussed at the argument, but inasmuch as what has been said practically disposes of all the questions in the case, we will not prolong this opinion by adverting to them.

We find no error in any of the rulings of the Court and the judgment will therefore be affirmed.

*Judgment affirmed.*

(Decided June 23rd, 1897).