### INSURANCE.

Common Pleas Court of Ashtabula County.

THE OHIO MUTUAL SAVINGS & LOAN COMPANY v. JOHN
WANDA ET AL.

Decided, 1915.

*Fire Insurance—Validity of Clauses against Alienation of Title—Policy*
*Invalidated by Conveyance by Husband to Wife of an Undivided*
*Interest in the Property Insured.*

A policy of fire insurance, containing a clause against alienation of
title or interest without the consent of the company, is invalidated
by the conveyance by a husband to his wife of an undivided one-
half interest in the property insured without securing the consent of
the company thereto, where the marriage of the couple occurred
subsequent to the issuance of the said policy; and in an action for
recovery under such policy the insurance company is entitled to
judgment on the pleadings.

ROBERTS, J.

A motion has been made in this case for a judgment upon the pleadings, so far as the issues are concerned between John and Rosa Wanda upon one side, and the insurance company upon the other; there being no dispute upon the proposition involved in this motion, which is that subsequent to the issuance of the insurance policy by the company to John Wanda he, by deed, conveyed an undivided one-half interest in the property to Rosa Wanda, who became his wife at or about the time of the conveyance to her. The insurance company was not advised of this conveyance, nor did it endorse any consent thereto on the insurance policy.

A determination of this motion involves a single proposition of law, and that is, whether, under the terms of this policy and the agreed conditions involving the conduct of the parties, the

policy becomes void so far as the insurance company is concerned, and I will not attempt to elaborate an opinion. upon this motion. The determination of what the law is upon this single proposition will determine what disposition should be made of the motion.

The commendable industry of counsel has resulted in the collection of a large number of authorities, many of which have been cited in argument, and to which it will not be necessary to now refer, further than inasmuch as what is now being said is taken by the stenographer, I would like to suggest these authorities which have been cited, for the reason that the collection will be further valuable upon other occasions when this question may arise.

Counsel for the insurance company, in support of the motion, have cited and commented upon 65 O. S., page 157, and from the opinion in the case, page 163; 2 Clement on Insurance, page 152, rule 7;. 86 Maryland, 130-145; 21 Florida, 399; 158 Pennsylvania, 459-461; 69 O. S., 136; 36 O. S., 608; 51 Conn., 251; 48 O. S., 533; 1 C. C., 79.

Counsel for the Wandas have cited 17 Iowa, 176-185; 40 Iowa, 551-553; 48 O. S., 534; 19 Cyc., 742.

The authorities cited upon the respective sides tend to support the contentions upon those sides, and, still, there is not an utter lack of harmony between them. I wish to call attention, for a moment, to this 48 O. S., page 534, which, it is said, cites with approval the 40 Iowa, with the suggestion that the difference in the decisions in the cases cited is largely the result in the difference in the wording in the clause with regard to alienation of the title in the different insurance policies. In 48 O. S., which was a case that held that the insurance was good unless there was an alienation of the entire title, it is said by the court, after citing a number of authorities which are in conflict with the decision:

"An examination of the cases above cited will disclose that the conditions in the policies, where forfeiture for alienation was sustained, were materially different from the one involved in this action, except perhaps in the cases in 30 Penn St., 311, and that

in 16 Wisc., 523, where the language of the condition was very similar to that now under consideration.  In the other cases sustaining the forfeiture, the condition contained a provision forfeiting the policy, not merely for a 'sale or transfer' of the property, but in case of 'a change of title' or the sale of 'any undivided interest therein.' ''

And farther on it is said:

''Let us recur to the exact words of forfeiture as they are set forth in the defendant's answer. 'If  *   *   *   said assured should sell or transfer the property thereby insured, that said policy should become null and void.'  It was competent for the policy to provide, expressly, that a sale of a part of the property or of an interest therein should avoid the policy; this they did not do.  The absence of a specific provision to that effect when it could have been se easily inserted, together with the rule before referred to that conditions which defeat a policy should be construed strictly against the forfeiture, leads us to hold that a sale of the entire interest of the party insured was necessary to avoid the policy.''

Undoubtedly, the language used in insurance policies, with regard to forfeiture or change of title, is largely the result of decisions upon that subject from year to year, and here was a situation where a part only of the title had been transferred, and the court held that the insurance was good.  The court, however, threw out the suggestion that insurance companies might very easily contract in such a way as to protect themselves against a partial alienation of the title, or change in the title, by expressly providing against liability under those conditions.  Taking advantage of that suggestion, policies were subsequently issued, so worded as to take advantage of the idea suggested by the court, and it is somewhat interesting to trace the history of this change in the wording of the policy in that respect, and I want to read a little from 13 Am. & Eng. Enc., commencing on page 239:

''By reason of the development of the clauses not contained in all policies of insurance, the decisions construing the older forms of policies are not of equal applicability, but their force

depends largely upon the effect of the conditions involved in each particular case. But it is also true that the older decisions have in fact exercised an influence in many cases upon the construction of later phraseology somewhat greater than their intrinsic applicability to the language of later policies would warrant. The desire of courts to avoid forfeitures and to construe provisions therefor strongly against the insurer has in part brought this about; in part, also, it has been caused by the natural tendency of courts to construe new forms of policies as nearly as possible like older ones. This influence of earlier decisions is especially marked in the judicial interpretation of the alienation clause. In connection with it, an acquaintance with the older decisions and the reasons on which they rest is essential.

"As the earlier policies contained no condition against alienation, the courts were called upon to lay down certain principles as to the effect of alienation *per se,* which have greatly influenced the construction of conditions against alienation. The contract of fire insurance being one of indemnity and depending upon and requiring an interest on the part of the insured, it is evident that when that interest has been terminated by alienation, no loss can be suffered by the insured, and he needs no indemnity. Hence a total transfer of the interest of the insured must defeat the insurance, because otherwise, if recovery might be had on the policy afer a complete transfer of interest, the contract would not be one of indemnity, but would amount to a wager whether the property would be lost or injured by fire. Nor would it be consistent with the theory of the fire-insurance contract to permit the alienee to recover in such a case. As has been said, the contract is personal; not the thing, but the interest of a person in the thing insured. Therefore, independently of any conditions in the policy, a transfer of the entire interest of the insured must terminate the insurance unless the insurer, by consenting to the transfer or otherwise, agrees to insure the transferee. If the whole interest of the insured has terminated, the insurance becomes inoperative by reason of the nature of the contract, and no condition to that effect is required.

"A mere change in the interest of the insured, however, stands on a different basis. There being no condition against this in the policy, a transfer that falls short of terminating the entire interest of the insured will not avoid the insurance as to the interest remaining, since, as far as that interest extends, the insured may suffer a loss, and may therefore be indemnified. Hence, after a transfer or alienation not divesting the insured of his whole interest, he remains insured to the extent of the interest

retained, in the absence of contrary conditions in the policy. The title must be absolutely divested in order to terminate the insurance, in the absence of conditions against change of interest. Any legal or equitable interest remaining in the insured, even the smallest, will be protected by the insurance to the extent of such interest.

" It is manifest that the rule just stated, while protecting the insured, is liable to work injury to insurers, who, though willing to insure an entire and absolute title, might consider an equitable or contingent interest remaining in the insured after conveyance too hazardous a risk. Consequently, underwriters very soon began to insert conditions in policies to meet such cases.

" It would hardly seem necessary to say that such conditions are reasonable, in accord with public policy, and valid, and the courts have so held.

" Where the policy is conditioned to be avoided by alienation or change of title or interest, without the consent of the insurer, a breach of the condition terminates the insurance without any formal act or declaration of forfeiture. The condition may be waived, but omission to declare a forfeiture will not constitute a waiver.

" The condition against alienation has had many forms, and the details must be considered in each case in order to determine the applicability of a particular decision. Careful attention to this will remove most of the apparent conflicts in the cases. The various forms used are referable to three general types. At first the condition appears, variously expressed, as a prohibition of ' sale,' ' transfer,' or ' alienation.' This condition, having been construed to refer to an absolute and entire alienation, failed to meet the requirement, and ' change of title ' was added to one or more of the former words. The courts generally held that only a voluntary alienation or change of title was intended, so that this form of the condition was soon supplemented by the words ' whether by legal process or judicial decree, or by voluntary conveyance,' or similar language. But this form did not provide for the more important matter of change of interest, whence the present clause forbidding any ' change in title, interest, or possession.'

" Conditions against ' sale,' ' transfer,' or ' alienation,' where ' change ' of interest is not forbidden, are strictly construed, and, in the light of the decisions as to the effect of alienation in the absence of conditions, are held to refer only to an absolute transfer of the entire interest of the insured, completely divesting him of rights in the property. Any sale or transfer falling short of

this which leaves him any interest that may be covered by the insurance is held not to be within the purview of the condition as to the interest remaining.''

So the general rule seems to be declared that simply a general provision, which was the case in the 40 Iowa, and also in the 48 O. S., does not avoid the policy, or a transfer of an interest only, in the title; but his text which I have read, and the reasoning indulged in in the 48 O. S., clearly indicate that parties have a right to contract in an insurance policy providing against liability in case of a change of title, and that, when such contract is made, it is valid.

I will say that I wanted to suggest several other authorities which have been cited, or collected in the consideration of this matter.

In the 1 C. C. Rep., page 79, is a decision by our own circuit court. The cause of action arose in an adjoining county. This was a case where a man by the name of Hall, in the town of Coalburg, was the owner of a stock of goods. He procured insurance upon the goods, subsequently sold an undivided one-half interest, as I remember the facts, to some one who sold to some one else, and finally the ownership of the whole stock came back to Hall, when the property was destroyed by fire. The court held that the insurer was entitled to recover. One of the partners at one time, was a man by the name of Kuntz, I think. In the opinion it is said:

''There is no doubt that when Hall sold to Kuntz there was an entire change of ownership. Neither was owner of any distinct part, but they were joint owners, and during the time of joint ownership, neither company would have been liable in case of loss.''

In the 20 Fed. Rep., page 657, the syllabus reads:

''The sale or transmutation of the various interests between partners themselves, and nobody else having the control, and leaving the posession where it was, does not invalidate the policy; but the introduction of a new partner, with an investiture of an interest in him which he did not have before, *does* invalidate the policy.

"And where the insurance is upon a single building, and the conveyance is of an undivided interest only, the conveyance avoids the whole policy, notwithstanding the interest of the insured remaining unconveyed is shown to exceed in value the sum insured."

· The 6 C. C. Rep. (New Series), page 132, is also cited.

As I have before suggested, a consideration of these cases indicates that the rule is very general and but little, if any, conflict actually exists in the decisions. The different conclusions arrived at by different courts are largely the result of different wordings of the alienation clause in the policies under construction, and the rule seems to be clearly established and generally recognized that a transfer or conveyance of an interest in the property only, where there is such a clause against transfer and against change in title or ownership, as is admittedly contained in the policy involved in this action, avoids the policy. It is true that such a conclusion involves hardship upon the insured and upon people insuring generally, for the reason that the ordinary person is not familiar with the terms of the policy which he accepts. People do not appreciate the importance of knowing what contracts they are making, or do not understand that they are endangering the protection of their policies by making transfers of their title, or selling interests, or encumbering the property, and people frequently, with the best of intentions, and without actually affecting the moral hazard or increasing the risk, invalidate their contracts, and lose the protection which they supposed they had in their insurance policy. But, on the other hand, insurance companies engaged in the business of indemnifying against loss by fire, as a business proposition, have a right to say under what conditions and circumstances they will agree to be responsible in case of a loss. These contracts of insurance are construed as any other contract, and when the insured accepts a policy, makes a contract with the company in which he expressly agrees that he will not be entitled to recover if he does certain things, and then does those things, there is no other proper course except to construe the contract as it was made by the parties, and this court must recognize the contract which the parties made as con-

strued by the courts, and it necessarily follows that the motion must be sustained in this case.