EISENZIMMER *v.* THE CONNECTICUT FIRE INS. CO.

(Decided December 11, 1924.)

*Messrs. May & May,* for plaintiff in error.
*Messrs. Mooney, Bibbee & Edmonds,* and *Messrs. Mather, Nesbitt & Willkie,* for defendant in error.

PARDEE, J.   The parties stand in this court as they did in the court below, and for convenience will be referred to as plaintiff and defendant.

The plaintiff brought an action to recover $3,500 from the defendant upon a fire insurance policy issued by it to the plaintiff, he claiming to have suffered a total loss and therefore to be entitled to the full amount thereof.

The defendant filed an answer, denying liability, and the case went to trial before a jury in the common pleas court of Summit county, with the result that at the end of the plaintiff's case, upon motion of the defendant, the trial court took the case from the jury and directed a verdict for the defendant. The plaintiff filed a motion for new trial, which was overruled, and judgment was entered upon the verdict, and the case is now here on error to reverse that judgment.

The attorneys on each side have filed very voluminous briefs, covering every angle of the case as they see it; but, from our examination of the record and the law applicable thereto, we believe that the case can be decided upon one or two principal points, which we will hereinafter attempt to set out.

The case was tried upon the third amended petition of the plaintiff, in which it was alleged that on the 11th of August, 1920, he obtained said policy of fire insurance from said defendant and paid the premium therefor, and that the same was to extend for a full term of three years; that the property insured was a frame dwelling, located upon a lot in Lakemore in said county; and that said lot was purchased by him individually, with his own money, without any contribution of any kind or character from his wife, but that at the time of purchase the title to the same was taken in the joint names of

himself and wife, and that the frame building covered by said policy was the sole and individual property of said plaintiff.

Plaintiff further alleged that on March 3, 1922, as the result of a fire, all of said building was destroyed; that notice thereof was immediately given to said defendant, as required by the policy, and that he did not furnish a proof of loss as required by the terms of said policy, because the agents of said defendant told him that the same was unnecessary and that he had done all that was required of him in the premises; that, afterwards, within the 60-day period in which proof of loss was to be filed, the agents of said defendant informed the plaintiff that proof of loss would be required; and that within 60 days from that time proof of loss was furnished to said defendant.

Defendant filed an answer containing five defenses: First, that only the insured named in said policy, to wit, the plaintiff, was insured against loss or damage by fire to a certain building, which was to be used and occupied for dwelling purposes only, and that the lot upon which said building was located was in the joint names of the plaintiff and his wife, which defense also contained a denial of all allegations of said petition not admitted; second, that the building was used for other than dwelling house purposes; third, that by reason of the occupancy of said building the hazard thereof had been increased, contrary to the terms of the policy; fourth, that the plaintiff had not given notice of loss, or proof of loss, as required by the policy; and, fifth, that the interest of the plaintiff in the said property as described in said petition was other than

unconditional or sole ownership, that all of the time said policy was in force a person other than the plaintiff had title to or interest in the property described in the policy, and that the property which was the subject of the insurance was located on ground which was not owned by the plaintiff in fee simple—all contrary to and in violation of the terms of said policy.

To this answer the plaintiff filed a reply in the nature of a general denial.

Upon the trial, the deed for the real estate upon which the dwelling was erected was offered in evidence, and it shows that the title to said property was taken from the original grantor in the joint names of the plaintiff and his wife, Goldie E. Eisenzimmer.

When Mrs. Eisenzimmer was put upon the stand she testified that she went to the agent of the defendant to procure the policy of insurance, and that the information upon which the policy was issued was furnished by her and taken down in writing by the agent of the defendant, and this writing was introduced in evidence, and it shows that the plaintiff was to be the assured. The plaintiff tried to prove by his wife that all of the consideration for the purchase of the lot was paid by him, and that the cost of the erection of the building covered by the insurance was paid solely by his money. This evidence was objected to and the objection was sustained, and what the witness was expected to testify to is fully set forth in the bill of exceptions.

The plaintiff offered himself as a witness, and offered to prove that he paid the sole consideration for the purchase of said lot and the construction and

erection of said house. The defendant objected to this evidence, which objection was sustained and exceptions were taken by the plaintiff, and a full offer of proof is contained in the bill of exceptions. Plaintiff also offered to prove that he superintended the construction and erection of said building, to which the defendant objected, which objection was sustained. The record further shows that the plaintiff rented the house to the tenants who occupied it, and that he otherwise looked after said property. The plaintiff also offered evidence to show that he rented to the tenants solely for dwelling house purposes, which was objected to by the defendant, which objection was sustained.

The defendant claims that the plaintiff was not the sole and unconditional owner of said dwelling house, and that it was not erected upon land of which he was the owner in fee simple, the claim being made that, when the title to said property was taken in the joint names of the husband and wife, the presumption arose that the husband intended to and did make a gift to his wife of the undivided one-half of said property, and that, therefore, he was not the sole and unconditional owner of the same and did not own the land in fee simple, and further, that the interest of the insured was not truly stated in said policy.

We agree with the claim of the defendant that a presumption did arise as claimed by it.

"The rule as to the presumption in such cases is properly laid down by the counsel for the bank, from 2 Maddock's Chancery, 112—where a person purchases property with his own funds, and places the title in the name of a stranger, the legal pre-

sumption is that he made such purchase for his own use, and that the property is held in trust for him. But when such purchase and conveyance is made by a man to a member of his own family, the presumption is the other way, and the property is held to be a gift or advancement. These are, however, mere abstract presumptions that may be rebutted by circumstances or evidence going to show a different intention, and each case has to be determined by the reasonable presumptions arising from all the acts and circumstances connected with it; so that it may happen, that where property is thus purchased and placed in the name of a stranger, the presumption that the law will draw, taking all the circumstances into consideration, will be that the property was intended for and vested absolutely in the person in whose name it was placed. On the other hand, it frequently occurs that property purchased and paid for by the father and placed in the name of a child, even where there is no positive evidence of trust, will be presumed, from the facts connected with it, to be intended for the use of the father, and held in trust for him.'' *Creed* v. *Lancaster Bank,* 1 Ohio St., 1, at page 10.

See, also, section 1039 of volume 3 of the fourth edition of Pomeroy's Equity Jurisprudence.

As stated in the case of *Creed* v. *Bank, supra,* the presumption of a gift or advancement to a wife or child is rebuttable, and where title to real estate is taken in the name of a wife subsequent admissions of the wife are competent, with other evidence, to prove that it was not the intention of the husband to make it a gift to the wife.

"Where a man purchases real estate, and has the title made to his wife or child, whether the transaction is to be regarded as a settlement or an advancement is purely a question of intention. The presumption, however, in the first instance is that the conveyance was intended as an advancement—but that presumption may be overcome by evidence." *Wormley* v. *Wormley*, 98 Ill., 544.

"Where it appears that after a deed to a wife was given the husband continued to control and manage the property, that he improved it, and paid the taxes, and appropriated the rents to his own use, and that the wife on several occasions stated that she did not own the land, but held it in trust for her husband, the presumption of gift arising from the relationship is rebutted, and the beneficial interest in the land belongs to the husband." *Elliott* v. *Prater*, 260 Ill., 64, 102 N. E., 1015.

"A presumption of fact is an inference which the triers of fact may draw from the existence of certain established facts, but which they are not required to draw, while a presumption of law is an inference which, in the absence of direct evidence on the subject, the law requires to be drawn from the existence of certain established facts." 22 Corpus Juris, p. 82, Section 25.

See, also, *Smithsonian Institution* v. *Meech*, 169 U. S., 398, 18 S. Ct., 396, 42 L. Ed., 793; *Bachseits* v. *Leichtweis*, 256 Ill., 357, 100 N. E., 197.

From the foregoing authorities it is clear that the presumption which did arise in this case might be overcome by other evidence.

We are therefore unanimously of the opinion that the evidence tendered by the plaintiff that he furnished all of the consideration for the purchase of said lot, and for the erection of said building, was properly offered and ought to have been received by the trial court, and that its rejection was prejudicial error. This evidence was competent, first, to show that although the deed was taken in the joint names of the plaintiff and his wife, she did not furnish any of the consideration therefor, and it therefore was not held by her by right of purchase; and, second, plaintiff having furnished all of the money for this purpose, this fact, taken with other competent evidence, might show that he did not intend to make a gift to his wife, and thus overcome the legal presumption that would arise from the mere taking of title in the name of the wife. Whether or not the plaintiff intended it to be a gift was a question to be determined from all the evidence, and could not rest entirely upon the deed which was offered in evidence, which raised only a presumption in favor of its being a gift.

The evidence admitted in this case tended to show that the plaintiff had the control and supervision of the construction and erection of this house; that he was in possession of the same, through his tenant, from the time of its construction until the time of its destruction. The evidence further tended to show that the wife was not making any claim that she owned either the house or the land upon which it was built, because it was she who had the property insured in the name of the plaintiff. This was in the nature of a disclaimer on her part that she

owned said property, and an admission that both the house and lot belonged to the plaintiff.

The policy required the plaintiff to be the sole and unconditional owner of the property insured, and he was required to own the land upon which the building was situated, in fee simple. It was conceded that he owned one-half of the same in fee simple, and the question of whether he owned the other half in fee simple was one of fact to be determined by the jury, under proper instructions from the court. The plaintiff might have owned all of the property in fee simple without having any written evidence of title at all, or he might have written evidence of title to only one-half of the property and the other one-half might be held in trust for him by someone else by written evidence of title.

As is said in the defendant's brief:

"Construing the provision of the policy requiring sole and unconditional ownership the rule is well settled that the test of sole and unconditional ownership is whether the insured must sustain the entire loss in case property be destroyed, and if the insured's title is such that some person other than the insured will share in the loss in case of fire— then the insured's title is not that of sole and unconditional ownership. 2 Clement on Fire Insurance, p. 152, rule 7:

" 'To be unconditional and sole the interest must be completely vested in the insured, not conditional or contingent, nor for years, or for life only, nor in common, but of such a nature that the insured must sustain the entire loss if the property be destroyed; and this is so whether the title is legal or equitable.'

"This language is cited as settled law by the court in *Hartford Fire Ins. Co.* v. *Keating,* 86 Md., 130, 145 [38 A., 29, 31, 63 Am. St. Rep., 499]."

The author then continues:

"A test of sole unconditional ownership is to inquire whether the interest, legal or equitable, as owner is of such a nature that the insured must sustain the entire loss if the property be destroyed."

This, then, presents a question of fact for determination by the jury: Whether the plaintiff was the real owner of the property in fee simple, and whether he must sustain the entire loss of the property destroyed. The fact that the technical legal title to part of the property stood in the name of another is not conclusive and controlling, and competent evidence was admissible to show that the insured was such real owner that the entire loss in case of fire would fall upon him.

When the defendant made its motion, at the close of plaintiff's case, it thereby made certain admissions which the trial court was required to take into consideration in arriving at a proper decision upon the motion.

In the case of *Ellis & Morton* v. *Ohio Life Ins. & Trust Co.,* 4 Ohio St., 628, 64 Am. Dec., 610, the syllabus reads, in part:

"The courts of this state, in a proper case, have the power to take the evidence given by the plaintiff from the jury, and order a peremptory nonsuit.

"Such a motion involves an admission of all the facts, which the evidence in any degree *tends* to prove, and presents only a question of law, whether each fact indispensable to the right of action, and

put in issue by the pleadings, has been supported by some evidence.

"If it has, the motion must be denied; as no finding of facts by the court, or weighing of the evidence, is permitted."

And on page 646, the court, in its opinion, says:

"The motion involves not only an admission of the truth of the evidence, but the existence of all the facts which the evidence conduces to prove. It thus concedes to the plaintiff everything that the jury could possibly find in his favor, and leaves nothing but the question, whether, as matter of law, each fact indispensable to the right of action has been supported by some evidence. If it has, no matter how slight it may have been, the motion must be denied; because it is the right of the party to have the weight and sufficiency of his evidence passed upon by the jury—a right of which he cannot be deprived, and involving an exercise of power for which, without his consent, the court is incompetent."

We are therefore unanimously of the opinion that in this case, without the admissions which arise as a matter of law and without the evidence improperly rejected, there is a great deal more than a scintilla of evidence to support the claim of the plaintiff that he was the sole and unconditional owner of the property insured, and that it was erected upon land of which he was the sole owner in fee simple.

The record also shows, upon the other defenses set forth by the defendant, that after the fire the plaintiff went to the same office where he purchased his insurance and paid his premium, and told the ones who had charge of said office that he had suf-

fered a loss, and that they made out a written notice of that fact and mailed it immediately to the insurance company, upon which notice the insurance company acted.

The plaintiff also attempted to show that he was told, both by the agent of the defendant, and the adjuster for the defendant, that there would be nothing further required of him by way of proof of loss or otherwise. This evidence was rejected by the trial court and proper exceptions taken by the plaintiff. This ruling by the trial court was prejudicial error. The plaintiff had alleged that he had not made proof of loss as required by the policy because of the statements made by the agents of the defendant. As hereinbefore stated the plaintiff went to the same place and talked to the ones who had charge of the business of said defendant, and he claims that they were duly authorized in the premises and had a right to tell him that upon which he relied, as they were the authorized agents of the defendant, and, in fact, the policy offered in evidence shows upon its face that the Herberich-Hall-Harter Company was either the authorized manager or agent of the defendant at Akron, Ohio. The record further shows that the defendant, after the fire, still recognized the Herberich-Hall-Carter Company as its agent, and that it acted upon the notice of loss which was sent to it by said agent at the instigation of said plaintiff; but whether or not the statements were made as claimed by the plaintiff in regard to a waiver of proof of loss, and whether or not the Herberich-Hall-Harter Company or others were authorized to make a waiver as claimed, were all questions of fact to be determined by the jury, and

there would have been some evidence to sustain the claims of the plaintiff in this regard if the trial court had not rejected some of the evidence offered by the plaintiff upon this branch of the case.

We are therefore unanimously of the opinion that for errors committed by the trial court in the rejection of evidence, and in directing a verdict for the defendant at the close of plaintiff's case, the judgment will have to be reversed and the cause remanded for further proceedings as required by law.

*Judgment reversed and cause remanded.*

FUNK, P. J., and WASHBURN, J., concur.